# KIGHT

## *v.*

# METROPOLITAN RAILROAD COMPANY.

---

STREET RAILWAYS; CONTRIBUTORY NEGLIGENCE; NEGLIGENCE; DIRECTING VERDICT; EVIDENCE; NONEXPERT TESTIMONY; JUDICIAL DISCRETION.

1. Where following an explosion in an electric car caused by the blowing out of a fuse box, there is a stampede of the passengers, resulting in one of them, a woman, jumping or being pushed from the car, she cannot be said to have been guilty of contributory negligence precluding recovery for injuries so received.

2. The rule of *res ipsa loquitur* is always applied with caution, and only where there is an absence of positive proof of any definite act of negligence, or want of skill, though the accident itself is of an unusual and extraordinary character and one not likely to occur without such cause.

3. A street railway company is not liable for an injury to a passenger which the exercise of reasonable foresight would not have anticipated, or due care have avoided.

4. It is error for the trial court to direct a verdict for the defendant in an action against an electric railway company by a passenger who jumped or was pushed from the defendants' car as the result of a stampede of passengers caused by an explosion following the blowing out of a fuse box, while the car, which was part of a train of three cars, was being propelled up a heavy grade, where there is testimony for the plaintiff that the explosion occurred just as the motorman turned on his current almost full, and the expert testimony for the defendant is to the effect that the result of turning on the full force of the current suddenly on a car pushing a heavy load on a hill, would be to melt out a fuse and cause an explosion; but in such a case the jury should be instructed that while the defendant is not an insurer of its passengers, it is bound to use its utmost skill and vigilance to avoid such an accident.

5. The test of care or skill required in the methods, and use and opera-
tion of machinery and appliances, is the ordinary usages and
methods that obtain and are observed in the particular business,
as practiced by the average prudent man, professing knowledge
of the business; and railroad companies form no exception to
this rule.

6. The opinion of a nonexpert who was not present as to the cause of
the flashes attending the blowing out of a fuse box in an electric
car, is inadmissible in an action for damages against the railway
company, especially when offered in rebuttal instead of in chief.
The exclusion of such testimony is largely in the discretion of the
trial court, whose action is subject to review on appeal only when
palpable error is shown to have been committed in excluding it.

7. It is not error for the trial court to refuse to allow the plaintiff's
garments worn at the time of the accident to be introduced in
evidence, in an action against a street railway company to re-
cover damages for personal injuries resulting from the plaintiff
jumping or being pushed from an electric car during a stampede
of the passengers caused by the blowing out of a fuse box in the
car attended with an explosion and fire, where damages for in-
jury to the garments is not claimed.

No. 1265.   Submitted March 6, 1903.   Decided April 7, 1903.

HEARING on an appeal by the plaintiff from a judgment
of the Supreme Court of the District of Columbia upon the
verdict of a jury directed by the court in an action to re-
cover damages for personal injuries.          *Reversed.*

The COURT in the opinion stated the case as follows:

This action was brought by the appellant, Emma A. Kight,
against the appellee to recover for personal injuries caused
as alleged by the negligence or unskillfulness of the appellee
or its employees while the appellant was being carried as a
passenger in a street car of the appellee in the city of Wash-
ington.    The case was tried on the general issue plea of not
guilty as alleged.

The proof shows that on the afternoon of September 8,
1900, the plaintiff was a passenger in one of the defendant's
open electric motor cars, drawing a trailer northward and
up grade, on Fourteenth street between New York avenue
and H street, N. W., and pushing a large heavy disabled

car up the grade, in order to clear the tracks and open the way for the car in which the plaintiff was riding. As the leading car was about to round the curve into H street, a loud report was heard and a flash or flame was instantly seen to rise from the portion of the car near or about the controller and near to the seat occupied by the plaintiff. The rear fuse box of the car had been blown out, causing an instantaneous flash or flame, and which disabled the car. The flash, as seen by the witnesses, was variously estimated; some saying it was two or three feet high, and others that it extended to the top of the car. The explosion and flame were followed by a slight charring or ignition of the woodwork of the car, extending up to and around the running-board. The flame was soon extinguished, and before much damage was done the car. The report and outburst of flame produced a stampede of the passengers on the car, and the plaintiff, who was sitting on an end seat in the back of the car, either jumped from the car, or was pushed therefrom by the passengers crowding behind her, and fell upon the pavement and received serious injuries, for which she brought this action.

There were several witnesses examined, both for plaintiff and defendant; and among the witnesses for the plaintiff, was W. A. Poland, who testified with as much clearness and apparent precision as any other witness who testified in the case, and he said: " On September 8, at half-past four, a yellow car of the Metropolitan Railroad Company, a green motor and a trailer came up Fourteenth street, and between New York avenue and H came to a full stop. I was standing on Fourteenth street at the Manning building, and I heard a loud report and turned around and saw the flames shoot up in the air, to the best of my belief, 10 or 15 feet. I saw the motorman and conductor jump off the car, and the people jump off the car, just as quick as they could, and this lady (the plaintiff) fell on the concrete, and was taken up and carried into the bicycle store. I then went and helped them put out the fire with a cane I held in my hand; the fire was kindling the running-board back of the motor.

I was opposite the back part of the green motor where the conductor stands. The flames were right under the back wheel of the motor car. They extended from the back wheel to the dash — 2 or 3 feet. Plaintiff was on a seat at the side of the car right over the back wheel where the flame shot up. The people were all falling and tumbling out of the car. The flames shot up to the top of the car to the best of my knowledge, about 10 or 15 feet. They went up the side of the car in the air. I heard the report and that was so loud it attracted my attention to the car after it had stopped. When I went to the car plaintiff was lying on the concrete. It sounded like a revolver had been shot off. The passengers came out like a flock of sheep within two minutes."

On cross-examination the witness further said: "The wood of the running-board was black and charred like coal. When I got to the car it was burning and I tried to put out the fire with my cane; it was so hot that it scorched my cane. The fire was right over the back wheel. It came right over the wheel in that direction, and shot up in the air by the side of the running-board. I noticed a little iron box where they oil the wheel. The fire was opposite the back wheel; it came from under the car to the running-board, and that was on fire, and under the car from the running-board to the middle of the car, as far back as I could see, the woodwork was on fire. It was about from 2 to 3 feet from the back wheel to the back platform. I couldn't tell what was the cause of the fire." There were other witnesses who testified to substantially the same facts; all however showing some variation of their perception of the occurrence.

On the part of the defendant several skilled witnesses were examined to show the *modus operandi* of the electrical appliances used on the cars, and the effect and what will produce the blowing out or explosion of the fuse, arranged to arrest the force of the current and to protect the motor from injury. This construction consists of a fuse box, in which the circuit passes through two short pieces of soft

metal of high resistance, called *fuses,* which melt, or fuse, and open the circuit, if the current should, from any accident, become so strong as to be liable to heat the wires sufficiently to cause a fire; or, it may be made a part of the circuit at any point, either to regulate the volume of the current, prevent increase of current volume beyond the safety limit, and thus protect the motor from injury, in the application of electricity to the operation of railroads.

Of the witnesses who testified on the call of the defendant, one was Thomas J. Keating, who said: " I am foreman of the erecting shop of the United Railways and Electric Company of Baltimore. There are a hundred troubles that occur on electric cars that result in grounds and short circuits that you cannot provide against. The fuse is to protect the motor from damage from short circuits or grounds. It would be almost impossible to use a car without a fuse. If you put on the electrical appliances without the fuse the effect of a short circuit or a grounding upon the motors might be very serious. It might burn out a complete motor which would be very expensive. The next thing, the motor might, with a continuous arc in there, set fire to the car; and there are a great many things that if it was not for the fuse, there would be serious injury done to the motor, and the car would be permanently disabled. Without the fuse there would be danger of burning the motor out. The fuse is composed of lead and is made to carry so many amperes of current, and if a flow above that quantity is drawn through, the fuse will melt out and shut off the current from the motor. The idea is to have the fuse burn out instead of burning out the motor. The motorman is required to carry a certain number of these with him. If he blows one he simply unscrews the terminals and puts another in. That character of equipment was in general use in 1900 upon electric cars in Baltimore, and in all other places that I have any knowledge of. An overload has the same effect upon a fuse as a ground. There is no way of preventing groundings and short circuits; when the fuse

burns out the screws that hold it are sometimes destroyed. The car then has to be taken to the barn."

On cross-examination this witness said, " I have seen fuses when blown out make a flash probably 18 inches long. The sudden burning of the metal causes the flash. When an ordinary fuse blows out they can put a new one in and go ahead. They sometimes have to do what we call cutting the motor out. If one motor gets disabled, they find the trouble and cut that motor out, and go on to the barn with one motor. They do not ordinarily have to wait for another car to push · them in. There are a hundred or more different ways for a ground. Any wire of the motor — winding or field — winding that would get the insulation off and touch any iron of the motor, we would consider that a ground, and where it touched that iron the current would flow through that iron to the ground, instead of going its regular channel all the way through. A short circuit is where two wires, for instance in a cable, get together and the insulation gets worn off between the two. If that was a positive and a negative, and you got the insulation off them, that would be a short circuit. As a rule it is caused by some wearing out of some insulation or some wire getting bad or defective insulation on it."

The defendant also produced and examined H. W. Fuller, the general manager of the Washington Railway and Electric Company, which includes the defendant company. This witness says, " The fuse is put on a car for the same purpose that the safety valve is put on a boiler, to prevent the overloading the motors with current. This without a fuse would damage the equipment seriously. There might be an explosion. The fuse is considered a necessity in the operation of cars. It is not practicable to operate cars without it. It will prevent trouble in the power-house arising from over-loading of motors. Overloading of motors may be caused by the motorman, or by a short circuit or ground. There is no way to my knowledge to guard against short circuits. When a fuse blows out I should not say it makes an explosion as a rule; it might; I never knew one to make an explosion,

especially with that type of fuse box. I have often been present when one of these fuses burned out. I have heard a fuse go out with as much noise as a small firecracker; and there would be an instantaneous blaze; and I have known fuses to go out at other times without any noise, and without the slightest sign of blaze. I can give no reason why a fuse makes more noise and flash at one time than another. I have never seen one of those fuse boxes with one of those screws burned off — not of that type. Ordinarily it would indicate the passage of a heavy current and might make a flash." He further says, " that the cause of short circuits may be defective insulation; it may be water; it may be any one of a hundred different things; it may be that some foreign substance gets in the motor, such as a piece of metal thrown into it. Dirt or grease will produce it. If the armature gets too close to the field it will make a short circuit."

There were other witnesses examined, but it is unnecessary to recite more of the evidence for the present. At the close of the evidence, the court, on request of the defendant, directed the jury to return their verdict for the defendant, upon the ground that there was no legally sufficient evidence upon which the plaintiff could recover, and the verdict was returned accordingly; and the plaintiff excepted; and also excepted to two other rulings of the court, made in the course of the trial, upon questions of admissibility of evidence.

[The further material facts will be found stated in the opinion.—REPORTER.]

*Mr. P. A. Bowen* and *Mr. Philip Tindall* for the appellant:

1. The evidence raised a presumption of defendant's negligence. The practically unanimous concurrence of modern authority maintains the rule that proof of injury to a passenger, resulting from some accident to the means of conveyance or from some occurrence of an unusual, abnormal or extraordinary character connected with its operation, presents a *prima facie* case of negligence on the part of the

carrier, even though the specific nature of the accident be unknown and the reason for it unexplained. *Stokes* v. *Saltonstall*, 13 Pet. (U. S.) 181; *Gleeson* v. *Railroad Co.*, 140 U. S. 435; *Railroad Co.* v. *Howard*, 14 App. D. C. 290; *Harbison* v. *Railroad Co.*, 9 App. D. C. 67; *Railroad Co.* v. *Svedborg*, 30 Wash. L. R. 823; *Shay* v. *Railroad Co.*, 66 N. J. L. 334; 49 Atl. Rep. 547; *Fullerton* v. *Railroad Co.*, 84 Mo. App. 498; *Seybolt* v. *Railroad Co.*, 95 N. Y. 562; *Railroad Co.* v. *Cotton*, 140 Ill. 486; 29 N. E. Rep. 899; *Tramway Co.* v. *Reid*, 4 Colo. App. 53; *Railroad Co.* v. *Lauricella*, 87 Tex. 277; *Traction Co.* v. *Demarest*, 62 N. J. L. 755; *Whitney* v. *Railroad Co.*, 102 Fed. Rep. 850; *Railroad Co.* v. *Burrows*, 62 Kan. 89; 61 Pac. Rep. 439; *Felton* v. *Holbrook* (Ky. 1900), 56 S. W. Rep. 506; *Stoody* v. *Railroad Co.*, 124 Mich. 420; 83 N. W. Rep. 26; *Railroad Co.* v. *Rainbolt*, 99 Ind. 551; 9 Am. Neg. Cas. 277; *Edgerton* v. *Railroad Co.*, 39 N. Y. 227; *Stevens* v. *Railroad Co.*, 66 Me. 74; 9 Am. Neg. Cas. 405; *Spellman* v. *Transit Co.*, 36 Neb. 890; 9 Am. Neg. Cas. 538; *Railroad Co.* v. *Dawson*, 98 Va. 577; 8 Am. Neg. Cas. 359; *Railroad Co.* v. *Rubenstein*, 5 Colo. App. 121; *Wall* v. *Livezay*, 6 Colo. 465; *Spear* v. *Railroad Co.*, 119 Pa. St. 61; *Railroad Co.* v. *Walrath*, 38 Ohio St. 461; 10 Am. Neg. Cas. 23; *Cramblett* v. *Railway Co.*, 82 Ill. App. 542; *Boyce* v. *Stage Co.*, 25 Cal. 460; 9 Am. Neg. Cas. 66. The qualification, "resulting from some accident to the means of conveyance or from some occurrence of an unusual, abnormal or extraordinary character connected with its operation," is emphasized because it is the keynote to the applicability of the rule. The mere fact that a passenger receives injury while being transported is unquestionably insufficient to raise a presumption of the carrier's negligence. But when the further fact is established that the passenger's injury resulted from some occurrence connected with the agency of transportation, abnormal to its usual and proper operation, the negligence of the carrier will be presumed. *Dixey* v. *Traction Co.*, 180 Pa. St. 401; 1 Am. Neg. Rep. 675; *Burr* v. *Railroad Co.*, 64 N. J. L. 30. This rule is

based upon two considerations: First, the carrier has contracted to convey the passenger safely, certain contingencies excepted. When, through an accident to the means of conveyance, the passenger is injured, the contract is broken and it is but fair to require the carrier to prove the circumstances which alone relieve him from liability. Second, the means of conveyance are under the carrier's control. When an accident occurs, he of all persons is in a position to know and prove the facts tending to establish or to defeat a claim of negligence. The injured passenger is at once taken from the scene. When he recovers all evidence of negligence is obliterated by the removal and repair of the wreck. As stated in *Railroad Co.* v. *Rainbolt,* 99 Ind. 551, " any other rule would, in many cases, leave a passenger who sustained an injury by the defective condition of a railway track or bridge practically without remedy."

2. The defendant failed to overcome the presumption of negligence arising from the evidence.

3. If this particular car was in bad condition, it must be inferred that the inspector failed in the performance of his duty. Moreover, numerous authorities hold that a jury may, in its discretion, disregard the uncontradicted testimony of witnesses as to the performance of a duty where they would have been guilty of criminal negligence if they had neglected it. *Robinson* v. *Railroad Co.,* 9 Fed. Rep. 877; *Volkmar* v. *Railroad Co.,* 134 N. Y. 418.

4. On the whole, the evidence failed to conclusively explain this explosion or relieve the defendant of the imputation of negligence. Under the familiar rule of law, the question was one solely for the determination of the jury. *Poulsen* v. *Railroad Co.,* 45 N. Y. Supp. 941; *Poulsen* v. *Railroad Co.,* 51 N. Y. Supp. 933; *Leonard* v. *Railroad Co.,* 67 N. Y. Supp. 985; *Buckbee* v. *Railroad Co.,* 72 N. Y. Supp. 217.

5. The plaintiff was not guilty of contributory negligence. *Railroad Co.* v. *Hickey,* 5 App. D. C. 436; *Poulsen* v. *Railroad Co.,* 51 N. Y. Supp. 933; *Chouquette* v. *Railroad Co.,*

80 Mo. App. 520; *Railroad Co.* v. *Murray,* 55 Ark. 248; 18
S. W. Rep. 50; *Dunlay* v. *Traction Co.,* 18 Pa. Super. 206.

6. The court below assigned two reasons for holding the
witness Ager incompetent to testify along the lines of plain-
tiff's offer: First, that his evidence should have been given
in chief; second, that he was not qualified to testify as an
expert.   Concerning the first of these reasons, if plaintiff is
correct in contending that the fact of the explosion, without
evidence to explain its nature and cause, raises a presumption
of defendant's negligence, it follows as a natural corollary
that such evidence, offered in chief, would have been at least
superfluous if not entirely out of place.   At the time plain-
tiff's offer of proof was made, defendant had attempted to
show that the explosion was due solely to the blowing of the
fuse and that there could have been no other cause for it.
Plaintiff's offer of proof was directed to the overthrow of
this contention.   Its purpose was not to make out plaintiff's
case by explaining this particular explosion, but to rebut the
defense by indicating causes other than that which defendant
contended was the sole possible cause, which will produce
such an explosion.   Being offered solely for the purpose of
overthrowing the defense, it could not have been introduced
until the nature of the defense had been developed.   In re-
fusing to admit it, the court compelled the plaintiff to accept
as conclusive the defendant's explanation, qualified only by
the answers obtained from its witnesses on cross-examina-
tion.   *Railroad Co.* v. *Rainbolt,* 99 Ind. 551.

The court's refusal to allow this witness to testify, on the
ground that he was not an expert, was so clearly erroneous
as to demand a reversal.

Assuming that the line of examination proposed was such
as to require that the witness should have qualified as an
expert, he clearly had shown himself competent to give the
proposed information.   This information had reference to
the causes of certain disturbances which occur on electric
cars.   The witness had served three years in building, re-
pairing, and operating such cars and in attending to break-
downs.   In the course of this service he had seen disturb-

ances like that under discussion. It had been part of his
duty to repair the damage they had wrought. It was abso-
lutely essential to an intelligent performance of his duties
that he should know the manner in which electricity oper-
ates upon the car mechanism and the effects which follow
any derangement therein. He must have known the nature
and causes of the different troubles likely to arise that he
might provide against them or correct the conditions which
produced them. Whether he is to be called an electrician or
merely a mechanic, he offered to testify concerning a subject
with which he was entirely familiar and concerning which
others more learned in the technicalities of his calling, if un-
accustomed to practical car work, might have been entirely
ignorant. The court's real error, however, consisted in as-
suming that the line of examination proposed required that
the witness should qualify as an expert. It was not proposed
to obtain the opinion of the witness concerning the cause of
the particular explosion in question, but merely that he
should *state of his own knowledge* what would cause a like
flash, the witness having stated that in his experience he had
seen such flashes and knew what had caused them. The offer
of proof contemplated only that the witness should testify
concerning facts within his knowledge, not that he should
give an opinion in any sense of the term. *Life Ins. Co.* v.
*Lathrop,* 111 U. S. 620.

*Mr. C. C. Cole, Mr. R. Behrend* and *Mr. R. S. Huide-
koper* for the appellee:

1. The occurrence of the accident under the circumstances
of the present case does not create the presumption of neg-
ligence. Here there was no accident to the means of trans-
portation which caused the injury, like a collision, a car
leaving the track or starting while a passenger is in the act
of boarding or alighting from it, which are the usual occur-
rences that create the presumption of negligence on the part
of the carrier. It cannot even be said that there was any
*accident* to the means of transportation. What did occur

was not in the nature of an accident. It was something that was provided for, and something which frequently and necessarily occurs. This court has clearly drawn the distinction between the classes of cases where the proof of the circumstances of the accident creates the presumption of negligence, and those where no such presumption arises. *Harbison* v. *Railroad Co.,* 9 App. D. C. 60. See also *Curtis* v. *Railroad Co.,* 18 N. Y. 543; *Inland & Seaboard Coasting Co.* v. *Tolson,* 139 U. S. 555; *Transportation Co.* v. *Downer,* 11 Wall. (U. S.) 129; *Railroad Co.* v. *State to use of Mahone,* 63 Md. 135; *Railroad Co.* v. *Gibson,* 96 Pa. St. 83; *Railroad Co.* v. *Robinson,* 73 Tex. 277; *Scott* v. *London Dock Co.,* 3 H. & C. 596; *United States* v. *Rose,* 92 U. S. 281; *Manning* v. *Insurance Co.,* 100 U. S. 693; *Le Baron* v. *East Boston Ferry Co.,* 11 Allen (Mass.), 316; *Yerkes* v. *Keokuk Packet Co.,* 7 Mo. App. 268; *Hammack* v. *White,* 11 C. B. (N. S.) 587, 594; *Wabash, St. Louis & Pac. RR. Co.* v. *Lock,* 112 Ind. 404, 413, 414; *Beatty* v. *Central Iowa RR. Co.,* 58 Iowa, 242; *Chicago, etc., RR. Co.* v. *Stumps,* 55 Ill. 367; *Sharp* v. *Kansas City Cable Co.* (Mo.), 20 S. W. Rep. 94; *Camden & Amboy RR. Co.* v. *Burke,* 13 Wend. (N. Y.) 611; *Tuttle* v. *C., R. I. & P. RR. Co.,* 48 Iowa, 240; *Scott* v. *London Dock Co.,* 34 L. J. Exch. 220; *Georgia Pac. RR. Co.* v. *Hughes,* 87 Ala. 61; *Georgia & Northern Ala. RR. Co.* v. *Sullivan,* 59 Ala. 270; *Buckland* v. *N. Y. & H. RR. Co.,* 62 N. E. 955.

2. But even if it should be held under the authorities that the presumption of negligence arose in this case from the proof of the happening of the accident, that presumption is only *prima facie* and liable to be rebutted by the defendant. *Sullivan* v. *Phila. RR. Co.,* 30 Pa. St. 234; *Topeka City RR. Co.* v. *Higgs,* 38 Kan. 375; *Toledo RR. Co.* v. *Beggs,* 85 Ill. 80; *Newark El. Lt. & P. Co.* v. *Cuddy,* 62 N. J. L. 509; *Clarke* v. *Railroad Co.,* 9 App. Div. (N. Y.) 51; *Bird* v. *Railway Co.,* 28 L. J. Exch. 3. If, as we contend, the blowing out of the fuse in the operation of electric cars is matter of common knowledge, then no proof whatever was necessary on behalf of the defendant. But the defendant did not see

fit to rest upon that, but put in evidence which fully and conclusively proved that the occurrence was one that frequently and necessarily happens in the operation of electric cars, and that its system and appliances were those in common and general use at the time, and were in good order and condition. To the point that common carriers are only required to provide and use appliances in common and ordinary use, need only be cited the very recent decision of this court in the case of *Hayzel* v. *Columbia Ry. Co.,* 19 App. D. C. 359. The plaintiff in that case was an employee, but the same rule applies to passengers. See also *De Graff* v. *Railroad Co.,* 76 N. Y. 125; *Meier* v. *Penna. RR. Co.,* 64 Pa. St. 225; *Hazel* v. *Railroad Co.,* 76 Ill. 501, 505; *Readhead* v. *Middleton RR. Co.,* L. R., 4 Q. B. 377; *Vorbricht* v. *Gender, etc., Co.,* 96 Wis. 281; *Spalding* v. *Railroad Co.,* 30 Wis. 123; *Gibbons* v. *Railroad Co.,* 62 Wis. 546; *Menominee Co.* v. *Railroad Co.,* 91 Wis. 447; *Kelly* v. *Railroad Co.,* 109 N. Y. 44; *Ingalls* v. *Bills,* 9 Metc. (Mass.) 1; *McPaden* v. *N. Y. C. RR. Co.,* 44 N. Y. 478; *Carroll* v. *Staten Island RR. Co.,* 58 N. Y. 126; *Readhead* v. *Railroad Co.,* L. R., 2 Q. B. 412; *Tuttle* v. *Chicago, R. I. & P. RR. Co.,* 48 Iowa, 240.

3. Where a person, whether a passenger on the railroad or not, leaves a place of safety for one of danger and is injured thereby, the burden is upon such person to prove that he is justified in so doing, and that the injury resulting to him was caused by the negligence of the other party. Under such circumstances no person is justified in taking flight from an occurrence like the one referred to in this case. And if they do and an injury results therefrom, certainly a common carrier should not be liable therefor. Booth on Street Railways, paragraph 83; *Railroad Co.* v. *Felton,* 125 Ill. 466; *Woolery* v. *Louisville RR. Co., etc.,* 107 Ind. 381; *Girard* v. *Griswold,* 177 Mass. 57.

4. There is no error in the trial court's refusing to allow the witness Ager to testify as to what would cause such a flash as had been described in the evidence. The witness Ager testified that he had three years' experience with elec-

tric cars and railroads at the Metropolitan barn, doing general overhauling and repairing; he helped put the bodies of new cars on the trucks; he is now a steamfitter. Ager had not shown that he had knowledge of electric mechanism, or that he was competent to judge of the causes or defects of electrical currents. In the recent case of *Staubley* v. *The Potomac Electric & Power Co.* [*ante*, p. 160], this court was of the opinion that it does not follow that one who has merely worked about premises where electricity is used should have knowledge of its force and effect. See also *Inland & Seaboard Coasting Co.* v. *Tolson*, 139 U. S. 559; *Perkins* v. *Stickney*, 132 Mass. 217; *Story* v. *Congregation*, 63 Pa. St. 156; *Lawrence* v. *Boston*, 119 Mass. 126; *Chandler* v. *Jamaica Pond, etc.*, 125 Mass. 544; *Page* v. *Parker*, 40 N. H. 48, 59; *Steam Towboat Co.* v. *Starrs*, 69 Pa. St. 36–41; *Tucker* v. *Railroad Co.*, 118 Mass. 546, 548; *McCurdy's Appeal*, 65 Pa. St. 294; *Boardman* v. *Woodman*, 47 N. H. 120.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The plaintiff as appellant to this court has assigned three errors:

1. That the court erred in directing a verdict for the defendant.

2. That it erred in refusing to allow the witness Ager to testify as to what would cause such a flash as was described in the evidence; and,

3. That it erred in refusing to allow the plaintiff's garments worn at the time of the accident, to be introduced in evidence.

1. With respect to the first assignment of error, there are several questions involved. If the accident to the car by blowing out the fuse, causing a loud report and flame to proceed therefrom, was caused by any negligent act, omission of duty, or unskillful management of the electrical appliances of the car, on the part of the defendant or its em-

ployees, the act of the plaintiff, even supposing that she jumped from the car, would not preclude her the right to recover for the injuries she received. Whether the injury was caused by jumping from the car, or was caused by having been pushed therefrom, under the circumstances stated by the witnesses, would not constitute contributory negligence on her part. But the question is, whether there was evidence sufficient to require the case to be submitted to the jury, on the question of negligence, omission of duty, or unskillfulness in the control and management of the car, by the employees of the defendant, as the cause of the apparent danger to the passengers.

The plaintiff contends that the general principle or rule of presumption, that is sometimes applied in actions to recover for injuries received by alleged negligence, of *res ipsa loquitur,* applies; and that the nature of the accident itself furnishes ground for the inference that there was negligence or unskillfulness; or otherwise the accident would not have occurred. That rule of presumption is always applied with caution, and only where there is an absence of positive proof of any definite act of negligence, or want of skill, though the accident itself is of *an unusual and extraordinary character,* and one that would not likely occur without such cause. In such case, the presumption arising, the *onus* of explanation is imposed upon the defendant. But in this case, there are circumstances, apart from the nature of the accident itself, that would indicate that there was negligence or want of skill in the control and management of the car, that was the direct cause of the accident: That the current was too suddenly fed to the motor, and thus the explosion and flame were produced.

In the testimony for the plaintiff, the witness Landon speaks of noticing the cars moving up to the crossing at Fourteenth and H streets, and that they were slowed down. " That the motorman on the green car rang two bells for the crossing, and as he did so he turned his controller on almost full, his wheels buzzed round, but did not seem to have any effect. Just as he turned on the controller there was an ex-

plosion. The car was pretty full, and everybody jumped up in a panic-stricken way. I saw a couple of ladies fall and it seemed as though they had been trampled on by the rest of the crowd." The expert witness Keating examined for the defendant, says: " The effect of turning on the full force of the current suddenly, if there was a car pushing a heavy load on a hill, would be to melt out the fuse. That would result in an explosion, and flame not more than 18 inches long; not that long on a heavy pull, because it would melt out; not blow out; but if it blew out it would have a flash not more than 18 inches long." And so Fuller, another skilled witness examined for the defendant, says: " A motorman can cause an overloading of his motor by feeding his current too fast. This would close the fuse, and if there be any weak spots in the insulation it might cause a ground or short circuit. Where a motorman turns on his full current at the start, with a heavy load on a hill, if there is a defective spot in his motor it might make a short circuit or ground." And Bayne, the motorman on the car when the accident occurred, and a witness for the defendant, says: " We had stopped after we crossed New York avenue, and had started up to go north towards H street, and I was feeding up the current: I had fed it to one motor and that wasn't enough; I moved it from the fifth to the sixth point, and just then the fuse blew, the current stopped and I could feel the car give. I didn't hear any explosion; didn't see any blaze."

This proof, we think, though not definite and direct to the point of establishing negligence or unskillfulness on the part of the employees of the defendant, yet it presented circumstances reflecting upon those questions, and which tended to show a want of care and diligence, that ought to have been considered by the jury. It was their province to draw the proper conclusion from such circumstances, and not that of the court. It is, however, the duty of the court to keep the jury within the proper bounds of their province, and not to open a field to their mere speculation. This can only be done by careful and well-defined instructions, as to the rights of the parties concerned. In a case like the present, the

jury must be made to understand that a common carrier, such as a street railway, is not an insurer of the safety of its passengers; but it is, and properly should be, bound to use its utmost skill and vigilance to guard against the possibility of accident from the condition of its road and of the machinery and appliances used in the transportation of its passengers. *Stierle* v. *Union Railway Co.,* 156 N. Y. 70. The company, however, is not liable for an injury to a passenger which the exercise of reasonable foresight would not have anticipated, or due care have avoided; or, in other words, if the accident is not the *reasonable, natural,* and *probable* result of the situation, which ought to have been foreseen by the company in the exercise of that degree of care exacted from a carrier of passengers, the company is not liable. *Ayers* v. *Rochester Ry. Co.,* 156 N. Y. 104; *Reem* v. *St. Paul City Co.* (Minn. 1899), 80 N. W. Rep. 638; Joyce on Elec. Law, Sec. 529. The test of care or skill required in the methods, and use and operation of machinery and appliances, is the ordinary usage and methods that obtain and are observed in the particular business, as practiced by the average prudent man, professing knowledge of the business; and railroad companies form no exception to this rule. If, having exercised such skill and prudence in the performance of its business, and in the course of such performance, unforeseen accidents occur, negligence or unskillfulness cannot be imputed to it. *Kilbride* v. *Carbon Dioxide & Magnesia Co.,* 201 Pa. St. 552.

We think therefore there was error in directing the verdict to be rendered for the defendant.

2. In regard to the second assignment of error, little need be said. We perceive no reversible ground of error in the ruling of the court excluding the proffered testimony of the witness Ager. Though the witness said that he knew what caused the flashes when the fuse blew out or exploded, he was not present when the accident occurred, and could only give his opinion as to what did cause the flashes testified to by other witnesses. The witness was not an electrician and was not shown to have special knowledge of electric mechanism;

but he was asked to state what would cause such a flash as had been described in the testimony.    This the court refused to admit, on two grounds: First, that the witness had not qualified as an expert; and second, that the testimony should have been offered in chief, instead of being offered, as it was, in rebuttal.    The question was properly disallowed for the reasons stated by the court.    The matter was largely in the discretion of the trial court, and therefore only subject to review on appeal where palpable error is shown to have been committed in excluding the evidence.    *Seaboard Coasting Co.* v. *Tolson,* 139 U. S. 551; *Spring Co.* v. *Edgar,* 99 U. S. 645; *Perkins* v. *Stickney,* 132 Mass. 217; *Sorg* v. *Congregation,* 63 Pa. St. 156.

3. The third and last assignment of error is immaterial. The action is not for damage done the clothes of the plaintiff, and their exhibition to the jury could serve no lawful purpose.    The court was right in rejecting the offer.

For the error in directing the verdict for the defendant the judgment of the court below must be reversed; and it is so ordered.                    *Judgment reversed.*