# HAYZEL *v.* COLUMBIA RAILWAY COMPANY.

---

STREET RAILWAYS; MASTER AND SERVANT; DEFECTIVE APPLIANCES.

1. In an action against a street railway company by a former conductor to recover damages for personal injuries received while coupling cars, a question asked the plaintiff by his counsel as to what had been his experience in coupling cars, is properly excluded, when asked for the purpose of showing that lack of experience in an employee or lack of proper instruction by his employer will charge the latter with greater care than in the case of an experienced employee, and that there is a difference in the degree of care required of a steam-railroad conductor, who is frequently called

upon to couple cars, and that required of a street-car conductor, who is called upon less frequently to couple them.

2. Testimony, offered by the plaintiff in such an action, of a former master mechanic and engineer of the company, that long before the accident he had a conversation with an official of the company to the effect that the coupling appliance was the "worst in a mechanical way that was ever put on a car" and that some man would yet be killed by the contrivance, is properly excluded, especially where it does not appear that the official mentioned had any control over the equipment or management of the cars of the company.

3. Where, in such an action, the theory of the plaintiff's case is that there had been omitted from the coupling device a piece of supporting iron which would have made it safe, testimony to the effect that if such devices on street cars generally are properly supported by a stout piece of iron, they will couple automatically, is not rebuttal testimony, and is properly excluded when offered as such.

4. Where, in such an action, the defendant company is charged with negligence in having on the plaintiff's car an unsafe appliance for the coupling of cars, or in having a safe appliance in a bad condition, and the plaintiff himself shows that he knew of the defect before the accident and that he incurred the risk with full knowledge of the danger and without any command or instruction to that effect from any officer of the company, the trial court properly instructs the jury to return a verdict for the defendant.

5. A rule of the defendant company, in such a case, requiring the conductor of a car to use "every means in his power to help get a car in motion" when it is blocked, does not require a conductor to put himself in a position of danger for that purpose.

6. The law requires of employers only such appliances as are in common use.

7. To render an employer liable to his employee for injury received in the use of a defective appliance, it must be shown that the employer had knowledge of its defective condition, or reasonable opportunity for such knowledge.

8. While knowledge on the part of an employee of a defect in an appliance will not defeat a recovery as against his employer unless he knew that such defect rendered the appliance dangerous; the employee cannot recover if the use of the defective appliance could not have caused his injury if he had not placed himself in a position of danger in its use.

No. 1107.   Submitted January 14, 1902.   Decided March 4, 1902.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, entered

upon a verdict directed by the court in an action against a street railway company to recover damages for personal injuries.                                              *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a judgment of the Supreme Court of the District of Columbia, rendered in an action of trespass on the case for personal injuries alleged to have been sustained by the appellant, William O. Hayzel, through the negligence of the appellee, the Columbia Railway Company, a body corporate, in this District, and wherein upon the testimony a verdict had been directed by the court in favor of the appellee, the defendant in the court below.

The injuries complained of by the appellant in his declaration are stated to have been suffered by him on December 21, 1899. He had then been in the employment of the appellee for about ten years as a conductor on its street car line, operated by the underground electric system on H street and New York avenue, in this city, between Fourteenth street, northeast, and Fifteenth street, northwest. When he entered that employment the company used horses to draw its cars; subsequently it used the cable as its motive power, and finally, in July of 1899, it introduced electricity as a motor. The cars first used were the open summer cars, and they were equipped with a coupler for the connection of two or more cars, known as the Van Doren automatic coupler, which was entirely different from the coupling arrangement which had been used on cable cars. About the latter part of November of 1899 the closed or box cars, for winter use, were placed upon the line, and these also had the Van Doren coupler. But the arrangement on the open cars differed somewhat from that on the box cars in the circumstance that in the open cars the coupler rested on a heavy iron bar near the draw-head end of the draw-bar at a fixed distance from the slot-rail; and that in the closed or box cars the coupler rested on a thin piece of iron used as a tripper, which was part of a device for throw-

ing a wheel-guard in front of the car wheels when there were obstacles on the track. The difference of arrangement was known to the appellant.

On the evening of December 21, 1899, at about the hour of 7 o'clock, while the appellant, as conductor, in charge of a car designated as car No. 10, a closed or box car, with one James O. Brown as motorman, was making a trip westward, and when the car was in the neighborhood of Ninth street and New York avenue, the lights on the car became extinguished, and it was found impossible to light them again, and the remainder of the trip was accomplished without lights. The motorman refused to make the return trip without a headlight, and so, when the next car came up to the station in the street at the west end of New York avenue, the appellant sought to have his car, No. 10, connected with it, and so to be taken back to the barn at the other end of the line. Two futile attempts were made to effect the connection. The appellant then noticed that the draw-heads of the two cars were not on a level, and supposing this to be the cause of their failure to connect, went between the two cars, and holding the two draw-heads on a level, directed the motorman of the second car to bring that car nearer so that the draw-heads might connect. But there was again failure. At this time it was that the appellant was injured. The draw-head of the second car shot out towards the plaintiff, and his arm was caught between the bumpers and rather severely injured.

Car No. 29, which was the second car, then went on its return trip, leaving the disabled car No. 10 at the terminus. Subsequently another car came up, and coupling was again attempted and was accomplished without any difficulty, and car No. 10 was taken to the barn. It was found, as testified, that the coupling pin of car No. 10 had been inserted in the wrong way. When it was reversed and inserted in the right way, the coupling seems to have been easily effected, and there was no trouble in taking the disabled car to the barn.

The appellant thereupon instituted the present suit against the company upon the theory that, by the omission

of an important and vital part from the coupling arrangement, namely, the heavy iron bar near the draw-head, on which the coupler rested, the company failed to furnish a reasonably safe appliance to the plaintiff for the work necessary to be done by him.

At the trial of the cause in the court below the plaintiff, after the statement of the disabling of his car No. 10 by the extinguishment of the electric light, and after giving in evidence a rule of the company, which was in the following terms:

" When a car is blocked on the road from any cause whatever, it is the imperative duty of the conductor to leave his car instantly, and by every means in his power to help to get the cars in motion with as little delay as possible; and as soon as the obstruction is removed, to go to his car at once; the gripman must remain in charge of the cars at all times " —

thereupon proceeded to testify as to the occurrence of the accident by which he was injured and the mode of its occurrence. His statement, as set forth in the record before us, is as follows:

" The plaintiff thereupon further testified that he had been in the employ of the defendant company for nearly ten years, and that he had never had any instructions as to coupling cars; that, while there, waiting for the next car to come up, the plaintiff was inside his car making up his accounts and Motorman Brown was on the ground adjusting the draw-head and getting it in place to connect with the approaching car; that, when the following car came up, he started to couple it; that it ran up to plaintiff's car, the two draw-heads went together but refused to connect; that they thought the couplings had connected and started to go, but the couplings came apart; that they then made a second attempt, witness straightening the draw-heads in their proper place, when the cars came together and again refused to connect; that witness then saw that the draw-heads were not on a level, but were bent down; that under the draw-head, as shown by two photographs that were ad-

mitted in evidence, was a bar of iron supposed to be perfectly straight, which connected with the wheel-guard and was known as an *"apron;"* that, when anything was on the track, the apron was supposed to hit it, when the wheel-guard was supposed to fall on the track and pick up whatever was on it, preventing the wheels from running over it; that on car No. 10 this little bar of iron was the only support the draw-head had, and this little bar of iron being bent or sagged down, was the cause of the draw-heads not connecting; that when the witness saw the draw-head lying down on this little bar of iron he supposed that to be the reason for the failure to couple, and witness took the idea that if he held these draw-heads on a level when they came together they would connect; that he then got the motorman of the other car to come up far enough to get the draw-heads together, so that the hook or pin attached to witness' draw-head could enter the draw-head on the other car, but that the draw-head shot out to one side, would not connect, bolted out to one side towards the plaintiff on the left side, and caught his arm between the two bumpers; that witness was standing between the Columbia track and the Fourteenth street track; that witness held the draw-head and they ran far enough to get its hook to enter the draw-head of the other car; that witness brought them on a level, thinking they would connect; they (the draw-bars) did not touch his body, but just came out, and the car buffers caught his arm at the elbow."

He further testified " that he had gone on duty on car No. 10 about two o'clock on the day of the accident; had made about six trips and that he had taken no notice of the condition of the draw-bars or apparatus when he went on duty that day; that he was standing on the ground or concrete when the other car came up; that he could not see the coupling construction underneath the car without stooping, and that he did not stoop down before the cars tried to couple."

Thereupon the plaintiff was asked the following question: " What had been your experience in coupling cars, and what kind of coupling apparatus had been used on the cable cars

and on the open summer cars?" The purpose of this question was stated by plaintiff's counsel to be to show that, when an employee is lacking in experience, or when he has not been properly instructed, the negligence of the railroad company is greater than in the case of an experienced employee; and also to show that there was a difference in the degree of care required of the conductor of a steam railroad train, who is frequently called upon to couple cars, and that required of the conductor of a street car, who is called upon less frequently to couple, especially when a change in construction has been made. Upon objection by the defendant the question was excluded; and upon the exception taken by the plaintiff to this ruling the first assignment of error is based.

After some further testimony by the plaintiff in cross-examination, re-direct and re-cross-examination, Theodore J. King, previously at different times master mechanic, chief engineer and superintendent of the defendant company, but who seems to have gone out of its employment, was called as a witness on behalf of the plaintiff. After testimony by him tending to show that the coupling appliance on car No. 10 was insufficient and manifestly dangerous, he interjected upon cross-examination a statement of a conversation between him and an official of the defendant company long before the accident, to the effect that the coupling appliance was "the worst thing in a mechanical way that was ever put on a car," and that some man would yet be killed by the contrivance. This was not in response to any question by counsel for the defendant; and upon his motion the statement was stricken out, but with leave to the plaintiff to offer it again if he made it relevant. The plaintiff accordingly at the close of the testimony again offered King's conversation with the official referred to in evidence, and stated its purpose to be to show knowledge by the company of the imperfection of the coupling appliance and of the danger attendant thereon. Upon objection on behalf of the defendant it was again excluded. Exception was reserved; and upon this exception the second assignment of error is based.

There was other testimony on behalf of the plaintiff not necessary here to be stated as it gave no occasion for exceptions. Nor is it necessary now to state the testimony on behalf of the defendant, and for the same reason, further than to say that the general tendency of it was to show that the coupling appliance in question was in use in other cities, that immediately before the accident the plaintiff had been warned by his own motorman and by the conductor and motorman of the other car in regard to the danger of going between the cars for the purpose of coupling them, and that the failure to couple had actually resulted from the insertion of the coupling pin in the wrong way.

At the conclusion of the defendant's testimony the plaintiff, in rebuttal, offered to adduce the testimony of three or four witnesses, to the effect that, when the draw-bars of street cars are properly supported by a stout piece of iron, they will couple automatically, notwithstanding variations, laterally or perpendicularly, in the height of the cars, caused by the crowded condition of the cars or by inequalities in the track. Objection was made on behalf of the defendant on the ground that it should have been offered in chief, and the objection was sustained. Upon the exceptions taken to this ruling the third and fourth assignments of error are based.

The testimony on both sides having then been closed, the counsel for the defendant moved for an instruction to the jury to return a verdict for the defendant upon the evidence; and the motion was allowed, and a verdict was accordingly directed. Upon the exception to this ruling the fifth and sixth assignments of error are founded.

Judgment having been rendered for the defendant in accordance with the verdict, the plaintiff has appealed.

*Mr. John C. Gittings, Mr. Clarence R. Wilson* and *Mr. Joseph R. Fague* for the appellant:

1. There was not an overwhelming preponderance of testimony in favor of the defendant on the issues of fact pre-

sented by the evidence, so great as to warrant the presiding justice in directing a verdict for the defendant.

2. The plaintiff was not guilty as a matter of law of contributory negligence in going between the cars to support the draw-bars in his hands to effect a coupling after the two unsuccessful attempts. *Railroad Co.* v. *Grant,* 11 App. D. C. 107, 114. See also *W. & G. Ry. Co.* v. *McDade,* 135 U. S. 554.

We do not say, of course, that there was no danger in what Hayzel did; but we do most emphatically say that the danger was not so obvious that in going between the cars to couple them, even after two unsuccessful attempts, Hayzel, *as a matter of law,* was guilty of contributory negligence. See *Washn., etc., Ry.* v. *McDade,* 135 U. S. 554, 571. The bare fact that a man does a thing which may be considered dangerous, is not in itself contributory negligence. *Baird* v. *Railway Co.,* 61 Iowa, 359; *Railway Co.* v. *Fredericks,* 71 Ill. 294; *Lawless* v. *Railway Co.,* 136 Mass. 1; *Railway Co.* v. *Puckett,* 42 Ill. App. 642. See also the following cases which resulted from coupling cars: *Baird* v. *Railway Co.,* 61 Iowa, 359; *Railway Co.* v. *Fredericks,* 71 Ill. 294; *Railway Co.* v. *Puckett,* 42 Ill. App. 642; *Lawless* v. *Railway Co.,* 136 Mass. 1.

3. The risks incident to going between cars to support the draw-bars while a coupling is being made were not the risks incident to Hayzel's employment as a conductor, assumed by him upon entering upon and continuing in such employment. *Davidson* v. *Cornell,* 132 N. Y. 228, cited with approval in *Railway Co.* v. *Archibald,* 170 U. S. 665. See also *Hough* v. *Railway Co.,* 100 U. S. 213; *Railway Co.* v. *Herbert,* 116 U. S. 642.

Although Hayzel may have had actual knowledge that the " tripper " was substituted for the stout iron sliding-bar, nevertheless he is not chargeable with knowledge of the results of the change. It cannot be said, as a matter of law, that Hayzel should have known that the taking away of the iron slide-bar and the substitution therefor of the " tripper " made it necessary for him to go between the cars to effect a

coupling, and without such knowledge he could not have assumed the risks of going between cars to make couplings. This proposition is amply sustained by the following authorities:  *Railway Co.* v. *Archibald,* 170 U. S. 663; *Russell* v. *Railway Co.,* 32 Minn. 230; *Hungerford* v. *Railway Co.,* 41 Minn. 444; *Mahoney* v. *Dore,* 155 Mass. 513; *Fenen* v. *Railway Co.,* 143 Mass. 197; *Thomas* v. *Quartermaine,* 18 Q. B. D. 685; *Gregg* v. *Railway Co.,* 91 Mich. 624; *Smith* v. *Baker* (1891), App. Cas. 325; *Yarmouth* v. *France,* 19 Q. B. D. 647.

4. The questions as to what risks are incident to an employment, and what risks are assumed by an employee, are, like the questions pertaining to contributory negligence, ordinarily questions of fact to be determined by the jury.  *Yarmouth* v. *France,* 19 Q. B. D. 647; *Osborne* v. *London, etc., Ry.,* 21 Q. B. D. 220; *Smith* v. *Baker* (1891), App. Cas. 325; *Mahoney* v. *Dore,* 155 Mass. 513; *Fitzgerald* v. *Paper Co.,* 155 Mass. 155.

5. The defendant, in order now to avail itself of the doctrine of " assumed risks " as a defense, should have instructed or warned the plaintiff after the coupling apparatus had been made more dangerous to employees by the removal of the sliding-bar, of the increased hazards of the employment. Such warning not having been given, the doctrine of assumed risks does not apply to this case.  *Railway Co.* v. *Frawley,* 110 Ind. 18; *Railway Co.* v. *Watts,* 64 Tex. 568; *Railway Co.* v. *Callbreath,* 66 Tex. 526; *Railway Co.* v. *White,* 76 Tex. 102; Woods on Master and Servant, Sec. 714.

*Mr. J. J. Darlington* (*Mr. R. B. Behrend* and *Mr. M. Cleary Sullivan* being with him on the brief) for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

There are six assignments of error, but they are reducible to four, inasmuch as the third and fourth involve precisely the same question of law, and the sixth is not different from the fifth.

1. The first assignment is addressed to the ruling of the trial court, whereby the question was excluded which was put to the plaintiff by his counsel as to his experience in coupling cars, and as to the coupling apparatus which had been used on the cable cars and on the open summer cars. The theory, on which the proposed testimony is sought to be introduced, is plainly inadmissible. It would require a street railroad company to open a school of technology for its employees. The objection to it, to the effect that, when a man of mature age offers himself to pursue a particular employment, and by his offer represents himself to have the necessary experience for it, he cannot afterwards be heard to say that he should have been instructed by his employer in the performance of his duties, is so plainly the dictate of reason and common sense that elaboration of the subject would seem to be wholly unnecessary. It should be said that, neither in the brief nor in the oral argument for the appellant, does this point appear to be seriously, if at all, insisted on. And the same statement may be made in regard to the second assignment of error.

2. This second assignment of error refers to a conversation between the witness King and an official of the railway company, or rather to a remark which King claims to have made to the official long before the time of the accident, to the effect that the coupling appliance in question was dangerous, and the avowed purpose of the proposed testimony was to show that the attention of the company had been called to its dangerous character. Apart from any other objection to this testimony, it is very plain that it was inadmissible upon one ground, if for no other, that it did not appear that the official mentioned had any control over the equipment or management of the cars of the company. He may have been, for all that the record discloses to us, the secretary or treasurer of the company, having no charge whatever of the construction or management of the cars.

3. The third and fourth assignments of error, which are to the same effect, that is, addressed to the ruling of the court which, on rebuttal, excluded testimony to the effect

that, when the draw-bars of street cars are properly sup-
ported by a stout piece of iron, they will couple automati-
cally, notwithstanding lateral or perpendicular variations in
the height of the cars, we can not regard as well founded
in law. The whole theory of the plaintiff's case was that
from a piece of machinery otherwise safe there had been
negligently and improperly omitted a stout piece of sup-
porting iron which would have enabled the automatic coupler
to act efficiently. To this effect was the testimony in chief
adduced on behalf of the plaintiff; and we are unable to
see wherein this proposed testimony in rebuttal differs from
the testimony in chief. But of these two assignments of
error it may be remarked, as it was remarked of the first
and second, that they are not strenuously insisted on by the
appellant.

4. The substantial question in the case is that raised by
the fifth and sixth assignments; that is, whether upon the
testimony there was any issue proper to be submitted to the
jury. And we think that this question also was properly
determined by the trial court.

The law of negligence, and of contributory negligence,
and of the extent of the employer's liability to his employees,
would now seem to be well settled for us by repeated de-
cisions of our court of last resort. And that same high
tribunal would seem also to have settled, as far as human
language can settle it, the condition in which a trial court
may peremptorily instruct a jury to return a verdict in
favor of a defendant. It is unnecessary to repeat here the
enunciations of the Supreme Court of the United States
on this point. That has been repeatedly done in former
decisions of this court, and by the Supreme Court itself in
its later adjudications. It would appear that all that re-
mains to be done is to apply the well-established doctrine
in each particular case as it arises.

The record before us develops the case of an employee
suing his employer for alleged negligence on the part of the
latter in having on the car which the employee was charged
to operate an unsafe appliance for the coupling of cars, as

set forth in the first count of the declaration, or a safe appliance in bad condition, as stated in the second count of the declaration, all unknown to the plaintiff. The testimony of the plaintiff himself shows conclusively by his own admission that he knew of the defect, if defect it was, before the accident, and that he incurred the risk with full knowledge of the danger, and without any command or instruction to that effect from any officer of the defendant company. The rule of the company, which required the conductor of a car to use " every means in his power to help to get the car in motion " when it has been blocked, did not require him to put himself in a position of danger for that purpose. If it were to be construed that such was the requirement, it would also have to be held that by assuming the employment the plaintiff also undertook the risk. Whether he was warned of his danger in attempting to go between the cars, which was testified to by the two motormen and the conductor of the other car, and which was denied by himself, thereby raising a question of fact, which, if it stood alone, might properly have been left to the jury to determine, is of no consequence, since, under the ordinary rules of conduct that govern reasonably prudent men, and by the action of the two cars in the first attempt to couple them, he must have known that there was danger in going between them in the manner in which the plaintiff did and for the purpose for which he went.

It is not entirely clear from the pleadings or the testimony whether the defect complained of as existing in the appliance was the substitution of a slight piece of iron in the place of a stout one to support the draw-head, or whether it consisted in the bent condition of the piece that was actually used. The first count of the declaration would seem to be based upon the first assumption. But the plain answer to this is that the plaintiff's own witnesses show that appliances so constructed were in common use, and the law requires of employers only such appliances as are in common use. On the other hand, if the defect complained of was not in the iron piece that was used, but in the bent condition of that

iron, it is not shown that the defendant had any knowledge of such condition, or that there had been reasonable opportunity for such knowledge, and the plaintiff did become aware of it before the accident, as he himself admits.

It is argued, however, that the employee may know the character and condition of the instrumentality which he is called upon to use, and yet not have the means of knowing the nature and extent of the risks to which its use will expose him; and that in this regard the employer and the employee do not stand upon an even footing. This is the ruling of the Supreme Court of Michigan in the case of *Hathaway* v. *Railway Co., 51 Mich. 253,* wherein the same court in another sentence states the same doctrine in the same way, as follows: *"Although a servant may have known of the defects, this will not defeat his recovery unless he knew that the defects rendered the thing dangerous."* This is undoubtedly wholesome doctrine; but we cannot see that it applies to the present case. Here the use of the appliance, defective though it may have been, could not have caused the plaintiff's injury if he had not placed himself in a position of danger between the cars.

We fail to find in the record any evidence of negligence on the part of the defendant company. The act of the plaintiff, although well meant and inspired by a zeal to do his duty, was not the dictate of due caution on his part; and to his want of care and prudence the unfortunate accident must be attributed. In our opinion there was nothing in the case to be submitted to a jury; and we think that the trial court, which was of the same opinion, was correct in so ruling and in directing a verdict for the defendant.

The judgment appealed from must be *affirmed, with costs. And it is so ordered.*