EDITH E. WELLS *vs.* NORTHEASTERN TELEPHONE COMPANY.

Franklin.     Opinion April 9, 1906.

*Telephone Companies.   Negligence.   Guy Wires.   Lightning.   Evidence.   Exercise
of Due Care.   R. S., c. 55, §§ 17, 23.*

The plaintiff recovered a verdict of $804 for the destruction of her barn and
its contents by fire alleged to have been caused by the negligence of the
defendant company in the construction and maintenance of its telephone
line past the plaintiff's premises on the west side of the highway in the
town of Avon.   One of the defendant's poles upon which its line wires
were suspended, was erected within about five feet of the northeast corner
of the plaintiff's barn, and a guy wire consisting of a piece of ordinary
telephone wire was stretched from the pole to the corner of the barn.
There was no lightning arrester, or other appliance connected with this
guy wire or with the telephone wires in that vicinity, to divert powerful
currents to the earth at the time of thunder storms.   Immediately before
the fire, a thunder shower came up in the vicinity of the plaintiff's build-
ings and there was a discharge of lightning of extraordinary violence.   A
board on the corner post of the northeast corner of the barn was newly
split from a point a little above where the guy wire was attached down-
ward nearly to the sill.   When first seen the fire was in this corner of the
barn directly beneath the point where the guy wire was connected with it,
and there was no indication that the barn was struck by lightning at any
other point.   The plaintiff's theory in substance was that a fragment of
the lightning struck the telephone wires near by and that an electric cur-
rent was eventually conducted by means of the guy wire to the corner of
the barn which was thus ignited.   The defendant's theory was that the
barn was destroyed by lightning which descended directly from the clouds
and communicated the fire without the intervention of any of its tele-
phone wires.   Expert evidence in support of both theories was offered and
admitted.

In view of the admitted limitations of human knowledge respecting the laws
of electricity and the immeasurable potential of a lightning discharge, the
opinions of electricians in regard to its possibilities in a given case cannot
be adopted with the same confidence as expert opinions based upon
knowledge of the more exact sciences; and in view of the manifest effects
of the lightning upon the telephone poles and the corner board of the
barn in the case at bar, *Held:* that the evidence warranted the jury in
following the conclusion of those experts who believed that the destruc-
tive spark was conveyed to the corner of the barn by the telephone wires,

in preference to those who testified that the barn was struck by a branch of a lightning bolt discharged directly from the clouds.

If the plaintiff's theory is correct that it was not safe or suitable construction to connect the guy wire with the barn without a lightning arrester or circuit-breaker, then the evidence warranted a finding by the jury that the defendant company did not exercise reasonable and ordinary care in establishing its line at the point in question.

If the defendant's theory is correct that it is utterly impracticable to divert lightning currents from such a wire to the earth by means or any insulators or circuit-breakers hitherto devised, it cannot be said to be manifest error on the part of the jury to find that such wire should not have been attached to the barn at all, and that in making such a connection, the defendant, if possessed of scientific knowledge to sustain its theory, did not act with proper regard for the rights of the plaintiff and the safety of her property.

The defendant was not obliged by law to guarantee the safety of its system under all possible conditions and circumstances, but it was required to exercise that due and ordinary care which the present state of scientific knowledge, as well as common observation of the nature of electricity and the enormous power of lightning would suggest as reasonably necessary for the protection of life and property along its line.

On motion and exceptions by defendant.     Overruled.

Action on the case to recover damages for the destruction of the plaintiff's barn and its contents by fire alleged to have been caused by the negligence of the defendant in the construction and maintenance of its telephone line past the plaintiff's premises on the west side of the highway in the town of Avon.

Lightning during a thunder shower on the evening of August 22, 1903, was the primary cause of the fire. One of the telephone poles on which was suspended the wires of the defendant, stood about five feet from the northeast corner of the plaintiff's barn and this pole was guyed to the barn by means of a piece of ordinary telephone wire. There was no lightning arrester, or other appliance connected with this guy wire or with the telephone wires in the vicinity, to divert powerful currents to the earth at the time of thunder storms. The plaintiff claimed that lightning struck the main line of the defendant's wire some distance away and by means of the guy wire was conducted into her barn thereby setting fire to the same, and also that the defendant was negligent in the construction and maintenance

of its telephone line. The defendant contended that the barn was struck by lightning which descended directly from the clouds and communicated the fire without the intervention or conduction of any of the telephone wires, and that there was no negligence in the construction and maintenance of its said line.

The action was tried at the September term, 1904, of the Supreme Judicial Court, Franklin County. Plea, the general issue. Verdict for plaintiff for $804.68. The defendant then filed a general motion to have the verdict set aside. The defendant also took exceptions to the refusal of the presiding justice to give certain requested instructions, but these exceptions were not insisted upon at the Law Court.

All the material facts are stated in the opinion.

*F. W. Butler and E. E. Richards*, for plaintiff.

*Foster & Foster and Joseph C. Holman*, for defendant.

SITTING: EMERY, WHITEHOUSE, POWERS, PEABODY, SPEAR, JJ.

WHITEHOUSE, J. The plaintiff recovered a verdict of $804 for the destruction of her barn and its contents by fire alleged to have been caused by the negligence of the defendant company in the construction and maintenance of its telephone line past the plaintiff's premises on the west side of the highway in the town of Avon. The case comes to this court on the defendant's motion to set the verdict aside as against the weight of evidence. The exceptions are not insisted upon.

The defendant's line wires appear to have been suspended upon poles in the ordinary manner, one of the poles being erected within about five feet of the northeast corner of the plaintiff's barn. There was a curve in the road at this point and to counteract the tendency of the line wire to draw this pole from its vertical position, a guy wire, consisting of a piece of ordinary telephone wire, was stretched from the pole to the corner of the barn. One end of this guy wire appears to have been wound around the pole at a point about two feet below the telephone wires, and the other end attached to the barn by means of a lag screw driven into the corner post a short distance below the eaves. There was no lightning arrester, or other

appliance connected with this guy wire or with the telephone wires in that vicinity, to divert powerful currents to the earth at the time of thunder storms. Immediately before the fire on the morning of August 22, 1903, a thunder shower came up in the vicinity of the plaintiff's buildings. The rain fall was light, but it was followed by a discharge of lightning of extraordinary violence, though but a single flash of light was observed. About 650 feet north of the barn a large elm tree was standing on the easterly side of the road with its branches overhanging the travelled way and extending nearly to the telephone wires on the westerly side. The lightning struck this tree near the top and ran down almost the entire length of it splitting off a large branch nearly to the ground and stripping off some of the bark. One part of this electric discharge then appeared to cross the street under the telephone wires while another part ran along a wire fence.

Of the eleven telephone poles in the line extending northerly from the barn about 1800 feet, four, namely, numbers one, three, four and ten, counting from north to south were evidently shattered or slivered by the action of some part of this same electric discharge, while the other seven poles did not appear to have been injured by the lightning. Nor was there any distinct evidence of such injury to the pole at the corner of the barn or to any pole south of the barn. But the board on the corner post at the north east corner of the barn was newly split from a point a little above the lag screw, to which the guy wire was attached, downward nearly to the sill. When first seen the fire was in this corner of the barn directly beneath the point where the guy wire was connected with it, and there was no indication that the barn was struck by lightning at any other point.

Upon this state of facts it was the theory of the plaintiff that a fragment of the lightning bolt which shattered the elm tree, struck the telephone wires in close proximity to the overhanging branches; that an electric current was conducted by these wires to the most northerly pole that was found to be slivered, and in the opposite direction, past the most southerly pole that was splintered, to the pole at the corner of the barn; and that a current then passed into

the guy wire and thence by the wire to the corner of the barn which was thus ignited.

On the other hand the defendant company claims that of the three different general forms in which lightning may be discharged from the clouds to the earth, namely, the nearly direct line, the zigzag or angular course and the form of the inverted tree, the discharge in this case assumed the form of the branches of an inverted tree; that some of these branches struck the elm tree and the four telephone posts, independently of each other; that one of these fragments in like manner struck the corner of the barn and thus directly caused the fire; and that no electric current was conducted in either direction by the telephone wires and that none passed over the guy wire to the barn.

The defendant's theory is that the plaintiff's barn was destroyed by lightning which descended directly from the clouds and communicated the fire without the intervention or conduction of any of its telephone wires; and the company accordingly contends in the first place that nothing in the construction or maintenance of its telephone line past the plaintiff's premises can be deemed the proximate cause of the plaintiff's loss.

In support of the plaintiff's theory, attention is called not only to the manifestations of the lightning stroke actually observed at the time in question and the facts already stated in regard to the shattered poles of the telephone line and the riven board at the corner of the barn where the guy wire was attached and the fire was first seen; but also to the testimony of three electricians who gave evidence as experts upon the questions involved. Mr. Mallett, for twelve years an instructor in electrical science and a civil engineer does not controvert the proposition that lightning may be discharged to the earth in the form of the branches of an inverted tree, and is of opinion that when the lightning struck the elm tree in this case there might have been a secondary discharge which struck the telephone wires or poles and then followed the wires and passed to the earth by the best conductor it could find; but in his judgment a discharge in the form of the branches of a tree, or in any other form, would not be so widely diffused as to strike objects more than

two hundred feet distant from the principal charge.   He also states that it is in accordance with his actual observation in a similar instance cited by him, that lightning will follow telephone wires or a wire fence, and shatter some of the poles or posts, and jump over and leave untouched others in the same line.

Mr. Whitney, electrical engineer for twenty years, corroborates these statements and refers to his own observation of poles in a telephone line, shattered by lightning which left the wires, though insulated in the usual manner, and ran down the poles below the brackets on which the wires were strung.   The substance of the explanation given seemed to be that when a telephone pole was wet it was a very good conductor, and in case of lightning the quantity of electricity which may be discharged upon the wires is so greatly in excess of their carrying capacity that a part of it will leave the wires, and follow the poles to the earth.

Mr. Berry who has been engaged in the electric light business for seventeen years, a portion of the time as inspector of wires, and had made a special study of electrical construction, also explains in answer to interrogatories that in case of a very heavy discharge of lightning upon three telephone wires, the proportional part of it which those wires would be able to carry off would be very small for the reason that the potential of lightning, though never calculated, is supposed to be "up in the millions of volts," that in such a case the tendency of the electricity would be to split and go in both directions, and if it was wet it would jump from one pole to the other, the poles acting as lightning arresters: that it would jump from the wires or brackets to the pole and thence pass to the ground; that it would be liable to go down all of the poles, but if a pole was particularly dry and the wires were further away, it might not jump down to the pole.   He further testified as follows:  "Electricity goes by the best conductor, and as long as that conductor is insulated properly the current will be conveyed on that wire to its destination. . . . .  "When we deal with lightning, that is something there is no rule for, and it will go down a tree or any other object, and will diffuse over different objects; but the amount that the tree will carry or the amount that any wire will carry is hardly in our province to know . . . .

I have never known a discharge of lightning by different branches to extend to any points more than 100 feet distant."

On the other hand two electric engineers for the defense give testimony in support of theories directly contrary to those advanced by the plaintiff's experts. Mr. Mather, manager of the Portland Light and Power Company, who has been connected with the operation of electricity and of lightning wires and railroad wires for fifteen years, in the first place explains the tendency of lightning apparently coming from a single bolt to divide into branches as it strikes the earth, or objects on the earth, and states as the result of his observation that in one instance six poles, all on the same line and placed about 125 feet apart were struck by the same stroke of lightning. He testifies that if lightning struck the elm tree, it would not leave the overhanging branches and pass to the telephone line on the opposite side of the road, for the reason that it would naturally take the path of least resistance along the branches to the trunk of the tree and down the trunk to the earth. He failed to find any evidence that lightning had passed down the pole to the guy wire at the corner of the barn, and in his opinion the barn was struck by a branch of the lightning discharge which struck the large tree and the several poles mentioned, and was not ignited by any current which was conveyed by the telephone wires. The fresh crack in the board at the corner of the barn to which the guy wire was attached, in the absence of any similar mark on the pole, in his judgment has no necessary tendency to show that the electric current came in over that wire.

Mr. Fickett, the city electrician of Portland, who had been engaged for twelve years in work pertaining to electricity, corroborates Mr. Mather, and compares the spreading of a discharge of lightning as it nears the earth to the bursting of a falling rocket that has been projected into the air. In his experience lightning does not ordinarily leave an insulated wire and pass down a pole on which the wire is supported, and in his opinion the barn and the poles and the elm tree were all struck by branches of the same bolt of lightning.

In view of the admitted limitations of human knowledge respecting the laws of electricity and the immeasurable potential of a lightning discharge, the opinions of electricians in regard to its possibilities in a given case cannot be adopted with the same confidence as expert opinions based upon knowledge of the more exact sciences; and in view of the manifest effects of the lightning upon the telephone poles and the corner board of the barn in this case, it is the opinion of the court that the evidence warranted the jury in following the conclusions of those experts who believed that the destructive spark was conveyed to the corner of the barn by the telephone wires, in preference to those who testify that the barn was struck by a branch of a lightning bolt discharged directly from the clouds.

In *Southern Bell Tel. Co.* vs. *McTyer*, 137 Ala. 601, 97 Am. St. Rep. 62, the Court said: "These may be said to be familiar facts in physics and therefore within the common knowledge of mankind and within the judicial knowledge of Courts; that atmospheric electricity or lightning is frequently discharged from clouds and passes to the earth; that metal wires strung in the air are good conductors of electricity, much better than the air; that electricity so discharged in the vicinity of such wires is liable and apt to pass into them and along them to their ends and then through the best conductors at hand into the earth. It may also be said to be common knowledge that when two wires are strung near to each other within a foot or two on poles through the air after the manner of telephone and telegraph wires, there is a likelihood or liability that lightning in its descent from the clouds will strike and follow both of them to their ends unless diverted by other more attractive conductors and must necessarily then pass from them to the earth through the best conductor then in its general pathway." *Jackson* v. *Wis. Tel. Co.*, 88 Wis. 243. But it is contended that even if the plaintiff's theory on this branch of the case is correct, that fact is wholly insufficient to establish any liability on the part of the defendant. It is still insisted that there was no negligence or other fault on the part of the defendant which can legally be deemed the proximate cause of the fire.

It is alleged in the plaintiffs declaration that the defendant " carelessly, negligently and defectively constructed and maintained its said

telephone line in this particular. A telephone pole was placed in the ground within a few feet of the corner of the plaintiff's barn and the pole with the main wire thereon fastened or stayed to said barn by running a common telephone wire from the top of said pole to said barn without insulation or the insertion of lightning arresters or anything whatever to prevent the passage of electricity and lightning from said pole to said barn."

It is suggested in the plaintiff's argument, that the defendant invaded the plaintiff's premises and attached the guy wire to her barn without consent of her predecessor in title, who was the owner at that time, and without consent of the plaintiff since that time. (See R. S., chapter 55, section 23.) It is therefore contended that the defendant is liable for all damages resulting from such unauthorized acts irrespective of the question of negligence. (*Derry* v. *Flitner*, 118 Mass. 133.)

It is not in controversy, however, that when the line was originally constructed past the plaintiff's premises by the Dirigo Telephone Company, the defendant's predecessor, no pole was erected at the corner of the barn, but the main wire was directly connected with the barn by means of an insulated oaken bracket spiked to the corner post, and that this was done by the express consent of Mr. White, the owner of the premises at that time. But when the line was re-constructed by the defendant company the pole was erected near the barn, and the guy wire attached to the corner of it as heretofore explained, and Mr. White, who still owned the property, says he told the man who was working on the wire that he "thought it wasn't right." It appears, however, that the connection of the wire with the barn as made was acquiesced in by Mr. White, without further question, for nearly four years thereafter, and it is not suggested that any objection has ever been made by this plaintiff during the year of her ownership before the fire.

It also appears that the defendant constructed its line past the plaintiff's premises without first obtaining a written permit from the selectmen of the town as required by section seventeen of chapter fifty-five of the Revised Statutes. But this fact obviously did not contribute as one of the real and proximate causes of the plaintiff's

loss. *Cumberland Co.* v. *Tow Boat Co.*, 90 Maine, 95. It could not have influenced any of the laws of electricity or meteorology involved in the decision of the case.

In view of these considerations and the fact that in the declaration the plaintiff claims to recover on the ground of negligence, and not upon the assertion of an absolute liability of the defendant for the consequences of a tortious act, the trial of the case proceeded upon the former theory, and two questions were properly submitted to the jury, first, the question already fully considered whether the fire was caused by electricity passing along and over the telephone wires and the guy wire to the barn, and secondly, whether there was any negligence in the manner of constructing and maintaining its line at the point in question, and especially in connecting the guy wire to the barn without the attachment of lightning arresters or other appliances calculated to prevent a current of electricity of such intensity as to cause fire, from entering the barn by means of such wire.

It was incumbent upon the plaintiff then, to show in the second place, that in connecting and maintaining a guy wire between the telephone pole and the plaintiff's barn without lightning arresters or circuit-breakers, the defendant company did not use that degree of care, prudence and foresight demanded by the exigencies of the situation. The company was not obliged by law to guarantee the safety of its system under all possible conditions and circumstances, but it was required to exercise that due and ordinary care which the present state of scientific knowledge, as well as common observation of the nature of electricity and the enormous power of lightning would suggest as reasonably necessary for the protection of life and property along its line.

The plaintiff claims that there was a manifest failure of duty in this respect on the part of the defendant, while the defendant as strenuously insists that the construction was in all respects suitable and adequate, and that the loss was not occasioned by any fault of the company.

Upon this question, the testimony of the experts is as sharply conflicting as upon the first proposition. Mr. Whitney and Mr. Berry

the two electricians who testify for the plaintiff upon this branch of the case, give emphatic expression to the opinion that it is not a safe or proper construction to connect a telephone line to a building by means of a guy wire, as was done in this case; that such a method is not to be approved at all, but if adopted, it would not be reasonably safe or suitable construction unless provided with lightning arresters circuit-breakers or "strained insulators."

On the other hand Mather and Fickettt are equally positive in their statements that the method followed by the defendant is a safe and proper construction and the one generally adopted thoroughout the country for the low tension wires required in telephone business; that the insulators referred to by plaintiff's witnesses, or a lightning arrester attached to the guy wire, would be wholly ineffectual and useless against the tremendous force of a lightning current. Mather further states that he had found by experiment that it was necessary to insert twelve of "these insulators" one after the other in a long chain in order to insulate from each other two ends of a wire that was charged with an electrical pressure of ten thousand volts.

Some of the testimony, however, would seem to rest upon a misapprehension of the exact nature and purpose of a lightning arrester. It is fairly to be inferred from all the evidence that it is a device which might more appropriately be termed a lightning diverter, since the office of it is not to arrest the lightning, but to divert it from the wiring by offering a comparatively easy course to the earth. In this alternative path a short air space is left between two plates introduced directly between the line and the earth. This air space is an effectual insulator for the normal current over the telephone wire, but the violent surges of a lightning current are said to leap over the air gap and pass to ground.

It is not in controversy, it is true, that the electrical explosion in question on the morning of August 22, 1903, was one of extraordinary though not of unprecedented violence; and it was the obvious duty of the defendant company to adopt methods of construction with reasonable regard to the protection of life and property against the ravages of lightning, and to anticipate, as far as practicable by the

exercise of due care and prudence, not only the probable effects of ordinary lightning discharges, but of such extraordinary thunder storms as according to the common observation of men, are known to occur not necessarily once every year, but once in several years and at no regular intervals.    *Woodward* v. *Aborn,* 35 Maine, 271 ; *Smith* v. *Faxon,* 156 Mass. 598.

Thus if the plaintiff's theory is correct that it was not safe or suitable construction to connect the guy wire with the barn without a lightning arrester or circuit-breaker, the evidence warranted a finding by the jury that the defendant company did not exercise reasonable and ordinary care in establishing its line at the point in question.

Again if the defendant's theory is correct that it is utterly impracticable to divert lightning currents from such a wire to the earth by means of any insulators or circuit-breakers hitherto devised, it cannot be said to be manifest error on the part of the jury to find that such a wire should not have been attached to the barn at all, and that in making such a connection, the defendant, if possessed of scientific knowledge to sustain its theory, did not act with proper regard for the rights of the plaintiff and the safety of her property.

The conclusion accordingly is that the entry must be,

*Motion and exceptions overruled.*