SOUTHWESTERN TELEGRAPH & TELEPHONE CO. v. DAVIS.

(Court of Civil Appeals of Texas. Texarkana. April 29 1913. Rehearing Denied May 8, 1913.)

1. ELECTRICITY (§ 19*) — INJURIES — TELEPHONE WIRES—SAFETY APPLIANCES.

In an action for injuries to plaintiff's wife by lightning alleged to have been conducted into her residence over defendant's telephone wires running into the house, evidence *held* insuffi-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

cient to show as a matter of law that a lightning arrester if installed would not have prevented the lightning from entering the house and causing the injury.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

2. ELECTRICITY (§ 14*)—TELEPHONE WIRES—INSTALLATION—CARE REQUIRED.

Where defendant telephone company, in conducting telephone wires into plaintiff's house, in the exercise of reasonable care had reasonable grounds to apprehend that lightning would be conducted over its wires into the house and there do injury to persons or property, and there were known and approved devices for arresting or dividing the lightning, so as to prevent such injury, it was defendant's duty in the exercise of due care to provide such appliances as were reasonably necessary to guard against such accident.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 7; Dec. Dig. § 14.*]

3. ELECTRICITY (§ 19*)—TELEPHONE WIRES—SAFETY APPLIANCES—LIGHTNING ARRESTER.

In an action for injuries to plaintiff's wife by lightning conducted into plaintiff's residence over telephone wires, evidence *held* insufficient to show as a matter of law that lightning arresters were only used in the construction of telephone lines to prevent injury to the telephone appliances, and not to guard against injury to persons or property in the house.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

4. DAMAGES (§ 143*)—PERSONAL INJURIES—PLEADING.

Where, in an action for injuries to plaintiff's wife, the petition, after alleging that she was shocked by lightning entering plaintiff's house over defendant's wires, charged that the shock caused the wife to suffer a rupture of a cystic tumor causing the Fallopian tube and uterus to become inflamed and diseased, which resulted in the removal of one of her ovaries and uterus, from which she suffered great pain and mental anguish, the loss of the wife's womb was sufficiently pleaded to constitute a proper element of damage.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 410, 433; Dec. Dig. § 143.*]

5. NEW TRIAL (§ 102*)—NEWLY DISCOVERED EVIDENCE—DILIGENCE.

Plaintiff sought to recover for damages for an injury to his wife, due to lightning negligently conducted into the house over defendant's telephone wires, alleging that the shock caused a rupture of a tumor which necessitated the removal of her womb by a physician, and steps were taken by plaintiff to take the physician's testimony, but were never completed, and, though defendant's manager knew that such physician had performed an operation on plaintiff's wife, no inquiry was made of him until after the trial, when it was shown that the physician would have testified that plaintiff's wife had not suffered from a tumor, and that the removal of her uterus was not due to shock of any kind, but to an adhesion resulting from a previous operation. *Held,* that defendant was negligent in failing to secure the physician's testimony and was therefore not entitled to a new trial for alleged newly discovered evidence thereon.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 207, 210–214; Dec. Dig. § 102.*]

6. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—INSTRUCTIONS—MISUSE OF WORDS.

Use of the word "consent" instead of the word "consequence" in portion of the court's charge was not ground for reversal, where it was obviously a mere clerical error which could not have misled the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

7. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTED CHARGE.

It is not error to refuse requested charge on issues fully covered by instructions given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

Appeal from District Court, Cass County; P. A. Turner, Judge.

Action by R. E. L. Davis against the Southwestern Telegraph & Telephone Company. Judgment for plaintiff, and defendant appeals. Affirmed.

In his petition appellee alleged that, because of negligence of appellant in installing and maintaining a telephone in the house in Atlanta where he resided with his wife, she was severely shocked, and so injured, by electricity conducted into the house by the telephone wire during a thunderstorm. The specific negligence alleged was the failure of appellant to provide a lightning arrester to prevent electricity from entering the house through the telephone on the occasion of such storms. The petition contained other allegations as follows: "That on or about the night of April 12, 1912, during a thunderstorm, a heavy charge of electricity was conducted along the wires of defendant into the residence of plaintiff, going into the telephone instrument, exploding, and striking the wife of plaintiff, who was sleeping in said residence at said time. That said bolt of lightning severely shocked and rendered unconscious for some time the wife of plaintiff and caused her great physical pain and mental suffering. That when plaintiff's wife awoke from her unconscious state she found herself in nervous fright and her body numb. That said bolt of lightning had set fire to the wall of the hall wherein the telephone was situated and plaintiff's wife—plaintiff being absent from home at the time—extinguished the flames with great difficulty and physical exertion. That by reason of said shock plaintiff's wife's nerves were shattered and her nervous system permanently injured. That thereby her hearing was permanently injured and impaired and she was caused to suffer and continues to suffer great pain in her right ear, being unable to sleep upon her right side on account thereof. That the eyesight of plaintiff's wife was caused by said shock to become permanently weakened and greatly diminished." In addition to the general denial, appellant pleaded that, if appellee's wife was injured as he alleged, she was injured "during a severe rain and storm," and that her injury was due to "the act of God, same being an act or occurrence that was wholly beyond the power and control of this defendant." The appeal is from a judgment in favor of appellee for $1,250.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes .

A. P. Wozencraft and W. S. Bramlett, both of Dallas, Hill Stewart, of Atlanta, and Young & Stinchcomb, of Longview, for appellant. Hugh Carney, of Atlanta, for appellee.

WILLSON, C. J. (after stating the facts as above). [1-3] Appellant vigorously insists that the court erred when he refused its request that he instruct the jury to find in its favor. In support of its contention appellant asserts that there was no testimony on which to base a finding: (1) That appellee's wife was injured by lightning as alleged; (2) or, if she was, that an "arrester," had it installed one to prevent lightning from being conducted over its wires through the telephone into appellee's house, could or would have prevented the injury she suffered; (3) or, if an arrester would have prevented injury to her, that it was guilty of negligence in failing to install one. We think the contention should be overruled. The testimony was amply sufficient to support a finding that appellee's wife was injured by lightning entering the house through the telephone, and warranted a finding that the lightning would not have so entered the house had appellant installed an "arrester" to prevent it. In support of its insistence that there was no evidence on which to base a finding that it was guilty of negligence in not installing an arrester, appellant asserts that the testimony was undisputed that such devices were not used for the purpose of preventing injury to occupants of houses in which telephones were placed, but only for the purpose of preventing injury to telephones by lightning carried on wires connected to them. Had the testimony in that particular been undisputed as asserted, we do not think it would follow that it therefore appeared insufficient to show negligence on the part of appellant. Having undertaken, as it appeared it did, to install a telephone in appellee's house and connect same with its telephone line, appellant was "under a duty," in the language of Start, J., in Griffith v. New England Telephone & Telegraph Co., 72 Vt. 444, 48 Atl. 644, 52 L. R. A. 919, "to exercise the care of a prudent man in like circumstances. If, while in the exercise of such care, it had reasonable grounds to apprehend that lightning would be conducted over its wires to and into the house, and there do injury to persons or property, and there were known and approved devices for arresting or dividing such lightning, so as to prevent injury therefrom to the house or persons therein, then it was the defendant's duty to exercise due care in selecting, placing, and maintaining, in connection with its wires and instruments, such known and approved appliances as were reasonably necessary to guard against accidents that might fairly be expected to occur from lightning when conducted to and into the house over its telephone wires." That there were such appliances was shown by the testimony of the witnesses Guest, Phipps, Peavy, and Neville. That they were not used by other companies or persons operating telephone exchanges for the purpose of protecting occupants of houses in which such companies or persons had installed telephones would not acquit appellant of negligence in failing to use them if an ordinarily prudent person nevertheless would have used them. But the testimony was not undisputed as appellant asserts it was. While the witness Neville, manager of appellant's exchange in Atlanta, testified that "lightning arresters are not put in for the purpose of preventing injury to persons," and the witnesses Guest and Phipps testified that the principal object in using them was to protect telephones from injury by lightning, Neville further testified that appellant used them in its central office in Atlanta for the protection of its operators there, and in the city of Marshall for general purposes; and Guest testified they were used for such purposes in Daingerfield and Pittsburg.

[4] In his charge the court told the jury if they found for appellee they might consider, in estimating the damages, the loss to his wife of her womb. It is insisted the instruction was erroneous because not authorized by the pleadings. But we think it was. After alleging that his wife was shocked by lightning which entered his house over appellant's wires, as set out in the statement above, appellee alleged in his petition "that said shock as aforesaid caused his wife to suffer a rupture of a cystic tumor on one of her ovaries, and thereby causing the Fallopian tube and uterus to become inflamed and diseased. That after suffering for a period of about six weeks, being constantly under the treatment of her family physician, she was compelled to be taken to Texarkana and there operated on and have her ovary and uterus removed. That thereby she suffered great pain and mental anguish, remaining for some time in the hospital at Texarkana, and has since suffered and continues to suffer great pain and suffering. That as a result of said operation of removing her ovary and uterus plaintiff's wife has been rendered permanently incapable of producing children, to her great sorrow and distress of mind."

[5] Appellee claimed, and produced testimony tending to show, that at the time she received the shock his wife was suffering from a cystic tumor on one of her ovaries, and that the shock ruptured the tumor, causing inflammation which necessitated the removal of her womb. The operation for that purpose was performed by Dr. J. R. Dale of Texarkana. With a view, ostensibly at least, to taking his deposition as a witness, appellee propounded interrogatories to Dr. Dale and had appellant to propound cross-interrogatories to him. The nature of these interroga-

tories is not disclosed by anything in the record, nor does it appear that they were ever filed with the clerk as contemplated by law, nor that a commission to take Dr. Dale's answers thereto was ever issued; but it does appear that, if a commission was issued, no other steps towards securing Dr. Dale's deposition were taken. The case was tried without his testimony, without objection on the part of appellant that his deposition in answer to the interrogatories had not been returned, and without inquiry as to what his testimony, if made a witness, would be. A few days after the trial was concluded, appellant ascertained that Dr. Dale would testify that appellee's wife had not suffered from a cystic tumor, and that the necessity for removing her womb was not due to a shock of any kind, but to an adhesion resulting from a previous operation for the purpose of removing her ovaries. On the ground that this was newly discovered testimony, appellant asked for a new trial of the case, and complains of the refusal of the court to grant its request. We think the court was justified in overruling the motion on the ground indicated, because it did not appear that appellant had used the diligence it should have used before the trial to ascertain what it afterwards learned would be Dr. Dale's testimony. Appellant was advised by the allegations in appellee's petition that he claimed the operation on his wife for the removal of her womb was rendered necessary because of the rupture of a tumor, caused by the shock to her by the lightning, and that the operation was performed in Texarkana. It appeared that the citation in the case was served on the manager of appellant's exchange in Atlanta, and that at the time it was served he knew the operation on appellee's wife was performed by Dr. Dale. So, all that was necessary for appellant to do to ascertain who performed the operation referred to in the petition was to ask the manager of its affairs at the place where the accident occurred. It further appeared that, when inquiry was made of Dr. Dale after the trial, he promptly disclosed to appellant the information he acquired in connection with the operation performed by him. There is no reason to doubt he would as promptly have given the information had inquiry been made of him before the trial. Railway Co. v. Davenport, 110 S. W. 153.

[6] The seventh assignment is overruled. The use by the court of the word "consent" instead of the word "consequence," in the portion of the charge attacked, obviously was a mere clerical error which could not have misled the jury. The other objection to said portion of the charge, to wit, that "the burden it placed upon the defendant was too great," we think also is without merit. Looking to the charge as a whole, we do not think the jury could have construed it as authorizing them to find appellant guilty of negligence unless they believed an ordinarily prudent person under the circumstances of the case would have installed an arrester for the purpose of preventing lightning entering appellee's house over its wires.

[7] The fifth, sixth, and eighth assignments also are overruled. In the court's main charge and in special charges given at appellant's request, the jury were sufficiently instructed as to the issues presented by the special charges refused.

The judgment is affirmed.