## HELLWEG v. CHESAPEAKE & POTOMAC TELEPHONE CO.
### No. 7266.

United States Court of Appeals for the District of Columbia.

Decided Feb. 5, 1940.

Harry H. Bettelman, H. Max Ammerman, and Bernard Shankman, all of Washington, D. C., for appellant.

George P. Hoover and Ralph A. Van Orsdel, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

Appellant is the superintendent of the United States Naval Observatory in Washington, D. C. On the afternoon of June 6, 1934, while using the telephone in his office, he was struck in the ear by a discharge of electricity which flowed from the receiver of the telephone. An electrical storm was in progress at the time of the accident; and a flash of lightning occurred simultaneously.

Upon the closing of appellant's case—as plaintiff in the court below—and upon appellee's motion, the court directed the jury to return a verdict for appellee, for the reason that appellant had failed to prove negligence upon the part of appellee. As the motion to direct a verdict admitted every fact in evidence which tended to sustain appellant's case, and every inference reasonably deducible therefrom,[1] it

[1] Faucett v. Bergmann, 57 App.D.C. 290, 291, 292, 22 F.2d 718, 719–720; Glaria v. Washington Southern Ry., 30 App.D.C. 559, 563; Jackson v. Capital

follows that unless there was no evidence in the present case from which—when subjected to the applicable standard of conduct—a jury could reasonably have concluded that appellee was negligent, the action of the court, in directing a verdict, was erroneous.[2] It is necessary to determine, therefore, first, the standard of care applicable under the circumstances of this case, and second, whether—when tested by that standard—the evidence was sufficient, reasonably, to support a verdict in favor of appellant.[3]

■ In their briefs, and on argument, counsel for the opposing parties agreed that the applicable rule, generally adopted throughout the United States, was correctly stated in Griffith v. New England Telephone & Telegraph Co.[4] The applicable language of that case, which has been quoted, frequently, in the decisions of other jurisdictions, reads as follows:[5] "Having undertaken to place and maintain the instrument in the house, and connect it with its telephone line for the use of the deceased, in so doing it [a telephone company] was under a duty to exercise the care of a prudent man in like circumstances. If, while in the exercise of such care, it had reasonable grounds to apprehend that lightning would be conducted over its wires to and into the house, and there do injury to persons or property, and there were known and approved devices for arresting or dividing such lightning so as to prevent injury therefrom to the house or persons therein, then it was the defendant's duty to exercise due care in selecting, placing, and maintaining, in connection with its wires and instruments, such known and approved appliances as were reasonably necessary to guard against accidents that might fairly be expected to occur from lightning when conducted to and into the house over its telephone wires."

■ That, however, was not the standard applied by the lower court. In the instructions which he gave to the jury, in directing a verdict, the judge said: "Now, the duty of this defendant Telephone Company was not that of an insurer. It was not required to exercise the highest degree of care in the manner in which it installed and maintained this telephone equipment at the Naval Observatory. It was called upon to use the care that an ordinarily prudent company would have exercised under the

Transit Co., 69 App.D.C. 147, 99 F.2d 380, certiorari denied, 306 U.S. 630, 59 S.Ct. 464, 83 L.Ed. 1032.

[2] Boaze v. Windridge & Handy, Inc., 70 App.D.C. 24, 102 F.2d 628, 629: "If fair minded men may honestly draw different conclusions as to the existence or nonexistence of the negligence charged, the question is not one of law but of fact to be settled by the jury." Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Regal Cleaners & Dyers, Inc., v. Pessagno, — App.D.C. —, 109 F.2d 453, decided November 27, 1939.

[3] Jackson v. Capital Transit Co., 69 App.D.C. 147, 148, 99 F.2d 380, 381, certiorari denied 306 U.S. 630, 59 S.Ct. 464, 83 L.Ed. 1032: "The question is not whether there is any evidence 'but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"

[4] 72 Vt. 441, 444, 48 A. 643, 644, 52 L.R.A. 919. See Southwestern Tel. & Tel. Co. v. Davis, Tex.Civ.App., 156 S. W. 1146; Southwestern Tel. & Tel. Co. v. Abeles, 94 Ark. 254, 126 S.W. 724, 140 Am.St.Rep. 115, 21 Ann.Cas. 1006; Rural Home Tel. Co. v. Arnold, Ky., 119 S. W. 811; Texas Tel. & Tel. Co. v. Scott, 60 Tex.Civ.App. 39, 127 S.W. 587; Wells v. Northeastern Tel. Co., 101 Me.

371, 64 A. 648; Southwestern Bell Tel. Co. v. McAdoo, 178 Ark. 111, 10 S.W.2d 503; Southern Bell Tel. & Tel. Co. v. McTyer, 137 Ala. 601, 34 So. 1020, 97 Am.St.Rep. 62; Lynch v. Carolina Tel. & Tel. Co., 204 N.C. 252, 167 S.E. 847. Cf. Joyce v. Missouri & Kansas Tel. Co., Mo.App., 211 S.W. 900, and Delahunt v. United Tel. & Tel. Co., 215 Pa. 241, 64 A. 515, 114 Am.St.Rep. 958, in which the proper standard was held to be the exercise of the highest degree of care.

[5] In the briefs of both parties the following statement is set out, within quotation marks, purporting to be a quotation from the Griffith case: "Telephone companies are required to exercise ordinary care to use those 'known and approved appliances and devices that are reasonably necessary to prevent foreign currents, including charges of atmospheric electricity, from coming over their wires and equipment so as to prevent injury to persons and property'; and failure to use those known and approved devices and appliances so designed as to prevent foreign currents and atmospheric charges of electricity from passing through their wires and equipment constitutes negligence." As a matter of fact, there is no such language in the reported decision, as it appears both in the Vermont Report and in the Atlantic Reporter.

same circumstances, and that is that they would make use of and install the well known and approved appliances customarily used under the same circumstances by telephone people.

"The Colonel as a witness gave his personal opinion that they should have used a protector block, as I recall the testimony he said that should be used near the desk where the telephone is, where the subscriber sat, and yet on cross examination he frankly admitted that that never was done by The Telephone Company and under such circumstances as existed at the Naval Observatory. He also talked about this helix coil, but he says that was never used on a subscriber's equipment or in a situation like that at the Naval Observatory, and that was also true of his testimony with regard to these particular porcelain tubes. In other words, he expressed his opinion that this and that should have been done, but he does not testify that this defendant here failed to use the well known and approved appliances which were customarily used under the circumstances existing here."

Thus, a standard of "customary use" was substituted for the proper standard of "due care in selecting, placing, and maintaining * * * such known and approved appliances as were reasonably necessary * * *." An exception, based upon a similar erroneous concept, was noted and rejected by the Supreme Court, in Texas & Pacific R. Co. v. Behymer,[6] as follows: "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." While there may appear to be some confusion upon this point in the language of earlier cases decided by this court,[7] the rule stated by the Supreme Court, and followed generally by the federal courts,[8] provides a clearly marked pathway for us to follow.

In the present case, therefore, while evidence of installation and use of appliances customarily used was properly received, it was not conclusive. The jury might have found, from all the evidence, that installation and use of appliances customarily used constituted negligence, if it also found that other known and approved appliances were reasonably necessary under the circumstances.[9] It is significant in this

---

[6] 189 U.S. 468, 470, 23 S.Ct. 622, 47 L. Ed. 905.

[7] See Washington Asphalt Block & Tile Co. v. Mackey, 15 App.D.C. 410; Hayzel v. Columbia Ry. Co., 19 App.D.C. 359, 371; Kight v. Metropolitan R. Co., 21 App.D.C. 494, 510; Ball v. United States Express Co., 32 App.D.C. 177, with which compare McDermott v. Severe, 25 App.D.C. 276, affirmed, 202 U.S. 600, 26 S.Ct. 709, 50 L.Ed. 1162, and Clements v. Potomac Elec. Power Co., 26 App.D.C. 482, 495. Cf. also, District of Columbia v. Pierce, 44 App.D.C. 126, 141; Finney v. District of Columbia, 47 App.D.C. 48, L.R.A.1918D, 1103.

[8] Elkton Auto Sales Corp. v. Maryland, 4 Cir., 53 F.2d 8, 10: "* * * negligence, if established, cannot be justified by custom." See American Coal Co. v. De Wese, 4 Cir., 30 F.2d 349; The Indien, 9 Cir., 71 F.2d 752, 758, 759; James Baird Co., Inc. v. Boyd, 4 Cir., 41 F.2d 578, 582-583; Cadillac Motor Car Co. v. Johnson, 2 Cir., 221 F. 801, 804, L.R.A.1915E, 287, Ann.Cas.1917E, 581; United States Radiator Corp. v. Henderson, 10 Cir., 68 F.2d 87, 92, certiorari denied, 292 U.S. 650, 54 S.Ct. 860, 78 L.Ed. 1500; Chicago Great Western R. Co. v. McDonough, 8 Cir., 161 F. 657, 665, 666. See also, Joyce v. Missouri & Kansas Tel. Co., Mo.App., 211 S.W. 900, 902; Southwestern Tel. & Tel. Co. v. Davis, Tex.Civ.App., 156 S.W. 1146, 1148.

[9] 1 Wigmore, Evidence (2d Ed. 1923) § 461: "* * * 2. The chief difficulty here is of another sort. It arises from the necessity of distinguishing between the use of such facts evidentially and their use as involving a standard of conduct in substantive law. The distinction is in itself a simple one. (1) The conduct of others evidences the tendency of the thing in question; and such conduct—e. g. in using brakes on a hill, felt shoes in a powder-factory, railings around a machine, or in not using them—is receivable with other evidence showing the tendency of the thing as dangerous, defective, or the reverse. But this is only evidence. The jury may find from other evidence that the thing was in fact dangerous, defective, or the reverse, and the maintenance was or was not negligence, in spite of the above evidence. (2) Meanwhile, the substantive law tells them what the standard of conduct for negligence is; and this standard is a fixed one, independent of the actual conduct of others. To take that conduct as furnishing a sufficient legal standard of negligence would be to abandon the standard set by the substantive law, and would be improper. This conduct of others, then, (1) is receivable as some evidence of the nature of the thing in question,

respect that—according to the evidence introduced by appellant—the situation existing at the Naval Observatory was one of unusual character, i. e., that a copper roof resting on steel beams, the ends of which in turn were exposed, created an unusual hazard; that appellee installed its wires in close proximity to these and other conductors of electricity; and that this made necessary, in order to provide reasonable protection from foreign currents, the installation of known and approved appliances other than, and in addition to, those customarily used. In the light of this evidence, the question was one for the jury to determine and the lower court erred in directing a verdict.

It is not necessary for us to consider the other contentions and assignments.

Reversed and remanded for further proceedings consistent with this opinion.

---

because it indicates what is the influence of the thing on the ordinary person in that situation; but (2) it is not to be taken as fixing a legal standard for the conduct required by law.

"This distinction is patent enough, but it is sometimes judicially ignored. Such evidence is sometimes improperly excluded on the erroneous supposition that the mere reception of it implies that it is to serve as a legal standard of conduct. The proper method is to receive it, with an express caution that it is merely evidential and is not to serve as a legal standard."