J. C. GRIFFITH, ADMINISTRATOR, *v.* NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY.

May Term, 1900.

Present : ROWELL, TYLER, MUNSON, START and WATSON, JJ.

Opinion filed September 19, 1900.

*Telephone business—Business requiring special knowledge and skill to the end of safety—*The business of maintaining and operating a telephone line, as shown by the evidence referred to in the opinion, is one that requires special knowledge and skill in the construction, inspection and repair of the line and instruments, and in the use of known and approved devices, if any there be, to guard against harmful effects to persons and property from electricity which may be conducted over the line and into the instrument.

*Telephone business—Implied undertaking of company in respect to special knowledge and skill—*It follows that a telephone company, in contracting to place and maintain its instruments in connection with its wires for the use of its patrons in dwellings and other buildings, in the absence of stipulations to the contrary, is deemed to have undertaken to possess and exercise special knowledge and skill in respect to the maintaining and operation of a telephone line.

*. Telephone business—Care required that of a prudent man in like circumstances— Duty in respect to the use of known and approved devices—*If, in the exercise of the care of a prudent man in like circumstances, a telephone company has reasonable grounds to apprehend that lightning will be conducted over its wires to and into a house, in which it has placed one of its instruments, and there do injury to persons or property, and there are known and approved devices for arresting or dividing such lightning so as to prevent such injury therefrom, then it is the duty of the company to exercise due care in selecting, placing and maintaining such known and approved

devices as are reasonably necessary to guard against accidents fairly to be expected to occur from lightning when conducted into a house over telephone wires.

*Lightning as an act of God—When inquiry with reference thereto is not involved—* When there is evidence to show that an injury was inflicted by a portion of a diffused bolt of lightning, such that it could be controlled when upon a telephone wire by the use of known and approved appliances, and the jury so find, the general question of whether a bolt of lightning can be controlled, in its passage from the clouds to the earth, by any human agency, is not involved.

*The case—Question of defendant's negligence here for the jury—*In this case there was evidence tending to show that the decedent, while sitting under a telephone instrument, maintained in his house by the defendant company under a contract with him, was killed, during a sudden storm, by a portion of a diffused bolt of lightning carried into his house and to said instrument over the defendant's wire, and that the portion of the force of lightning by which he was so killed might have been safely conducted to earth by known and approved appliances, and that such appliances were not provided by the defendant. There was, therefore, evidence from which the jury might find that negligence on the part of the defendant, was the cause of the decedent's death.

*The case—Question of contributory negligence here for the jury—*Upon the question of contributory negligence on the part of the decedent, the evidence was not so decisive either way as to leave no room for reasonable doubt or opposing inferences, and that question was therefore properly for the jury.

*Same—Evidence in the light of matters of common knowledge—*The facts, circumstances and surroundings which the evidence tended to show, might properly be considered in the light of the common and extensive use of telephones and the manner and places of their use.

CASE, brought by the plaintiff as administrator of the estate of Dr. Royal T. Sawyer, deceased, to recover the pecuniary damages suffered by his next of kin in consequence of his death, claimed to have been caused by the wrongful act, neglect or default of the defendant. Plea, the general issue. Trial by jury, Rutland County, September Term, 1899, *Taft*, C. J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

At the close of the evidence the defendant moved the court to direct a verdict in its favor. This motion was overruled. The grounds of the motion as summarized by the defendant's counsel were as follows:

1.   That the plaintiff's intestate's death having been caused by a flash of lightning, the defendant was not under any contractual obligation to prevent the occurrence.

2.   That it was impossible to have prevented it. That there was no appliance, or device, which could have prevented it; and that in the absence of any express contract of insurance, no legal duty was imposed upon the defendant to perform an impossibility.

3.   That the plaintiff's intestate was guilty of such contributory negligence that no recovery could be had.

*G. E. Lawrence* and *Butler & Moloney* for the plaintiff.

*Hunton & Stickney* for the defendant.

START, J.   The evidence tended to show that the plaintiff's intestate, Dr. Sawyer, was killed by lightning while sitting in his house, under a telephone instrument owned by the defendant and by the defendant there placed, maintained and connected with its telephone line and instruments under a contract to do so for a stipulated rent to be paid by the deceased. The plaintiff claims that the lightning came to and entered the house over the defendant's telephone wire; that the defendant was negligent in that it did not provide and maintain, in connection with its wires and instruments, any appliance to conduct the lightning to the ground, or out of the house, without injury to the inmates therein; and that the deceased came to his death by reason of such neglect.

It appears that telephone wires from strokes of lightning, atmospheric conditions, and by coming in contact with electric light and trolley wires, may become charged with electricity so as to endanger life and property. And the evidence tended to show, that, in the absence of proper appliances and ground con-

nections, a current of electricity may jump from a telephone wire or instrument. In view of these facts and others that will be herein referred to, it is clear that the business of maintaining and operating a telephone line is one that requires special knowledge and skill in the construction, inspection and repair of the line and instruments, and in the use of known and approved devices, if any there be, to guard against harmful effects to persons and property from electricity which may be conducted over the line and into the instruments; and the defendant, in engaging in the business, and in contracting to place and maintain its instruments in connection with its wires for the use of its patrons in dwellings and other buildings, in the absence of stipulations to the contrary, is deemed to have undertaken to possess and exercise such knowledge and skill. 10 Am. & Eng. Ency. Law, 2d. ed., 872; *Brown* v. *Edson Electric Illuminating Co.* (Md.), 46 L. R. A. 745; *McKay* v. *Southern Bell Telephone Co.*, 111 Alabama 337, 56 Am. St. Rep. 59; *Griffin* v. *United Electric Light Co.*, 164 Mass. 492, 49 Am. St. Rep. 477; *Pecham* v. *Portland Electric Co*, 33 Oregon 451, 72 Am. St Rep. 730. Having undertaken to place and maintain the instrument in the house and connect it with its telephone line for the use of the deceased, in so doing, it was under a duty to exercise the care of a prudent man in like circumstances. If, while in the exercise of such care, it had reasonable grounds to apprehend that lightning would be conducted over its wires to and into the house, and there do injury to persons or property, and there were known and approved devices for arresting or dividing such lightning so as to prevent injury therefrom to the house or persons therein, then it was the defendant's duty to exercise due care in selecting, placing and maintaining, in connection with its wires and instruments, such known and approved appliances as were reasonably necessary to guard against accidents that might fairly be expected to. occur from lightning, when conducted to and into the house over its telephone wires. The questions reserved for consideration are, whether the evidence tended to·show a neglect of duty on the

part of the defendant in these respects; and whether the deceased, while in the exercise of due care on his part, came to his death by reason of such neglect.

The evidence tended to show, that at the time Dr. Sawyer was killed, one of the defendant's telephone poles was struck by lightning at a point about one quarter of a mile northeast of Dr. Sawyer's house; that the lightning seemed to spread and go in different directions, the wires being lit up and seeming to be all ablaze; that this pole was split in two, and several other poles in the immediate vicinity, and in the direction of Dr. Sawyer's house, were injured and the wire severed; that, at a point a mile and a half beyond Dr. Sawyer's house, the wire was wound around a lead pipe that was found to be melted, and in the opposite direction from Dr. Sawyer's house, at Putnamsville, traces of electricity were found upon an instrument; that, just before the lightning struck the defendant's telephone line, Dr. Sawyer was seen sitting in his house, under the telephone instrument, reading from a book; that, just after, his hair was discovered on fire and red lines were found extending down his neck, chest and side; that traces of electricity were found on the carpet, paper and floor under the chair in which he was sitting; that these were the only marks to indicate that lightning had entered the house; that no device, as a safeguard or protection against electrical disturbances, was attached to, or connected with, the instrument, except on top, where there was a device consisting of two metal plates, which, to be complete, should be furnished with a wire attached to one of the plates and running to the ground, and between the two plates was a plug intended to "short current the two plates without entering the bell cell", but owing to a defect in the construction of the instrument the plug did not serve the purpose for which it was intended.

This testimony tends to show that when the lightning struck the defendant's telephone poles, it diffused and went to earth by telephone poles in the immediate vicinity and over a wire leading to Putnamsville; and in an opposite direction over

a wire to Wheeler's; and that, in going to earth by way of Putnamsville, a part of the current passed over the wire to and into Dr. Sawyer's house. In the absence of any other strokes of lightning at that time, in the vicinity, and of any marks about the house that indicated that lightning had entered it in any other way, the jury could properly infer, from the facts which the evidence tended to show, that the lightning which killed Dr. Sawyer came to and entered the house over the defendant's telephone wire.

The defendant contends that the force which killed Dr. Sawyer could not have been controlled, diverted or interrupted by human agency. A determination of this question requires a consideration of the evidence. As we have seen, the evidence tended to show, that the lightning struck the defendant's telephone pole a quarter of a mile from Dr. Sawyer's house; that it diffused and went to earth by several different routes; and that only a small part of that force went to Dr. Sawyer's house. If the jury found as this evidence tended to show, then they were not called upon to find whether any human agency can control the course of a bolt of lightning in its passage from the clouds to the earth. In that event, they were only required to find whether the course of such part of a bolt of the lightning as the evidence tended to show went to Dr. Sawyer's house can be controlled when it is upon a telephone wire; and, in this connection, the question was whether the particular force which the evidence tended to show passed over the defendant's telephone line and killed Dr. Sawyer could, by proper ground connections, and by the use of known and approved appliances, have been controlled or diverted so as to have prevented the injury therefrom.

It appears that the telephone wire ran along on Dr. Sawyer's house for some distance before entering the house; and the evidence tended to show that the force which killed Dr. Sawyer passed over this wire into the house without injury to the wire in that vicinity, and without injury to the house. There were no marks to indicate that lightning had entered the

house, or that it had been in the immediate vicinity, except the marks on Dr. Sawyer's body and slight marks on the carpet, paper and floor under the chair in which Dr. Sawyer was sitting at the time of his death. There was evidence tending to show that lightning, when upon a telephone wire, will go to earth on the first ground connection that it comes to; that when such lightning as entered Dr. Sawyer's house and there killed him, gets upon a telephone line and passes over the wire without injury to the wire, it may be conducted to earth, by known and approved appliances for that purpose, without injury to persons or property; and that, if the defendant's line at Dr. Sawyer's house had been protected by such appliance and had been properly grounded, the force which killed him would have gone to the earth over such ground connection instead of jumping from the line and passing to earth through Dr. Sawyer's body. In this connection and by this evidence, issues of fact for the consideration of the jury were presented. It was for them to find what force passed over the defendant's telephone line to Dr. Sawyer's house and there killed him, and to find the extent of that force.

When the jury had found what the force was and its extent, it was for them to say whether there were known and approved appliances for arresting, diverting and controlling such force so as to prevent injury; and whether the defendant was negligent in not providing such appliances; and whether the deceased came to his death by reason of such neglect.

Upon the question of contributory negligence, the evidence was not so decisive one way or the other as not to leave a reasonable doubt or room for opposing inferences. As we have seen, the character of the business in which the defendant was engaged, and its undertaking to maintain an instrument in Dr. Sawyer's house for his use, were such that it was under a duty to exercise the care of a prudent man in like circumstances, in selecting, placing and maintaining, in connection with its wires and instruments, such known and approved appliances and ground connections as were reasonably necessary to guard against accidents

from lightning striking its telephone line and passing along its wires. The evidence tended to show, that a telephone line, by the use of known and approved appliances, and by proper ground connections, may be so constructed that the telephone instruments will be comparatively safe; that there were no such appliances or connections at or near Dr. Sawyer's house that were intended, in their then condition, to guard against accidents from such lightning as the evidence tended to show killed Dr. Sawyer; that there was a plug with the instrument, which was intended to be inserted between the plates on the top of the instrument, for the purpose of cutting the current of electricity out of the instrument; and that, just before Dr. Sawyer was killed, his daughter placed this plug between the plates, but there was no ground connection, and the hole under the plates was too small to receive the plug, and, by reason of these defects, it did not serve the purpose for which it was intended. There was also evidence tending to show that the storm came on without much warning. One witness, at least, testified, "It seemed to come up sudden." Upon this evidence, it was for the jury to say whether the deceased knew, or ought to have known, that the instrument was not provided with proper appliances and ground connection to guard against injurious effects from lightning when conducted to his house over the defendant's telephone line; whether a prudent man, in like circumstances, would have assumed that the defendant had done its duty in these respects, and omitted to inquire or investigate for himself; whether the deceased knew, or ought to have known, that a storm was approaching: and whether he knew, or ought to have known, of any facts that would have warned a prudent man in like circumstances of approaching danger and caused him to take measures for his safety by going to some other place, or doing something that was omitted by the deceased. The facts, circumstances and surroundings which the evidence tended to show were such that fair minded men might reasonably draw different conclusions, and were such, when considered in the light of the common and extensive use of telephones,

and the manner and place of using them, that a fair minded man might reasonably say that the deceased, at the time he came to his death, was intently reading in his library, wholly unconscious of the danger to which he was exposed; and that, in this, he was doing as a prudent man, under like circumstances, would be very likely to do. The question of whether the deceased was in the exercise of due care was for the jury.

*Judgment affirmed.*