## TRIPP v. COX.

(Circuit Court of Appeals, Fourth Circuit. March 10, 1924.)

No. 2159.

1. Electricity ⟾19(6)—Negligence in not guarding against lightning held for jury.

In action against power company, for damages to a cotton ginnery, caused by fire set by lightning, question of whether the fire was due to the power company's negligence in failing to provide protection for the ginnery against lightning *held* for jury.

2. Electricity ⟾16(1)—Producer's duty to protect customer against lightning.

Where the operator of a cotton ginnery had himself supplied the electrical appliance within the building for the reception of current furnished, the power company was not liable for damages caused by fire from lightning due to a defect in such appliances or failure to provide protective devices within the plant, but was liable merely if the fire occurred by reason of the company's failure to use due care in providing protective devices from the power plant to the connection of power company's wires with ginnery operator's cable.

3. Electricity ⟾14(1)—Care required to protect customer against lightning.

A power company, in discharging its duty to protect building furnished with power from fire from lightning, was chargeable with a high degree of care commensurate with the danger.

4. Electricity ⟾16(1)—Producer liable for loss by fire from lightning, due to failure to supply protective devices pursuant to agreement.

If a power company agreed with a customer to protect his building against lightning by protective devices, at the point of connection between power company's wires and the customer's cable, and the customer, in reliance on such agreement took no measure for his own protection, the power company would be liable for destruction of the building by fire caused by lightning, if due to absence of such devices.

In Error to the District Court of the United States for the Western District of South Carolina, at Greenville; Henry H. Watkins, Judge.

Action by R. W. Cox, in his own behalf and as trustee of and express trust in behalf of the Commercial Union Assurance Company, Limited, of London, against George B. Tripp, as receiver of the South Carolina Light, Power & Railways Company. Judgment for plaintiff, and defendant brings error. Affirmed.

---

⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

H. E. De Pass, of Spartanburg, S. C., and E. M. Blythe, of Greenville, S. C. (De Pass & Wrightson, of Spartanburg, S. C. and Martin & Blythe, of Greenville, S. C., on the brief), for plaintiff in error.

Henry K. Osborne, of Spartanburg, S. C. (Bomar, Osborne & Brown, of Spartanburg, S. C., on the brief), for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WOODS, Circuit Judge. In the summer of 1920, R. W. Cox constructed a ginnery on his farm about four miles west of Spartanburg, S. C., at a cost of $14,000, and contracted with South Carolina Light, Power & Railways Company to furnish electric power. His entire electrical equipment was installed by a contractor employed by him for that purpose. His wires came out of the ginnery wall through a lead cable and conduit; the ends of the wires extending about 3 feet beyond the end of the cable. Attached to the lead pipe was a ground wire placed there by Cox. The power company extended its line to Cox's property, placed a pole about 18 feet from the building, and nailed cross-arms to the side of the ginnery where Cox's wires came out of the building. On the pole it placed three fuse blocks, through which it ran the power wires, then attached them to insulators on the cross-arms, and made connection between the two sets of wires by twisting the ends together. For a month the gin operated without trouble, then the fuses on the pole began to kick out or melt, sometimes as often as three or four times a day. This continued for weeks; the power company repairing the fuses each time. Finally the power company disconnected the fuses, and made a solid copper connection between its wires and plaintiff's.

In February, 1921, during an electrical storm, the ginnery caught fire. The fire originated at the connection of the wires. The oil switch and inside wiring were completely destroyed. Cox replaced these fixtures and notified the company that he was ready for a connection. It again used the solid wire connection. Some time after this during an electrical storm there was another fire, which originated exactly as before. After repairs made by Cox, the power company for the third time connected its wires with those of the plaintiff by the solid wire connection. This last connection was made on September 8, 1921. On September 18, 1921, the ginnery was completely destroyed by fire during an electrical storm. No lightning arresters or other safety devices, save the fuses which were discarded, were used by either Cox or the power company.

Cox had the ginnery insured in the Commercial Union Assurance Company, Limited, of London, which paid him $6,900. In this suit, brought by Cox on his own behalf and as trustee of an express trust for the insurance company, the verdict was for $14,000, the value of the property.

The receiver of the power company submits the requested instruction for a verdict in his favor should have been given for four reasons: First, there was no actionable negligence on the part of the power company; second, the power company undertook only the duty

to furnish power at the connection of its line with that of plaintiff, not to protect plaintiff's property against fire caused by lightning; third, the negligence of plaintiff in having defective machinery and appliances improperly installed, was a proximate cause of the fire; fourth, the loss was caused by lightning, which the power company could not foresee or guard against.

The two previous fires at the same place during electrical storms, the occurrence of the third destructive fire, also during a storm, and coincident with a lightning stroke on or near the wire a short distance from the ginnery, together constituted strong evidence that the fire was caused by lightning. Laying aside for the moment the testimony of the experts, the unusual occurrence of three fires from lightning at the same plant and precisely at the same place—the connection of the wires of plaintiff and defendant—would seem to justify a jury of experience and understanding in drawing the inference that there was a defective appliance or some lack of care in guarding against lightning.

The nature of the confusing testimony of the experts on protection from lightning of plants operated by electrical power is due, no doubt, to the difficulty of the subject. Some of the testimony went almost to the extent of a denial of the value of any device as a protection against lightning. On the other hand, there was expert testimony that disconnecting switches, fuses, and other devices are protectors of greater or less value, according to the force of the lightning; their efficacy being least against a direct stroke on the wire.

[1] The circumstances of the fire and the expert testimony at least made an issue for the jury as to whether the fire was due to negligence in failing to provide protection for plaintiff's ginnery against lightning.

[2] This brings us to the question whether there was any evidence of assumption of duty by the power company to furnish the lacking protection. All of the electrical appliances for the reception of the current within plaintiff's plant were supplied by him, and therefore the defendant assumed no responsibility for any defect in such appliances or their management. 20 C. J. 364; 1 Joyce on Electric Law, § 445c. Thus for protective devices, or lack of them, inside his plant, and to the outside connection with the power company's wires, plaintiff alone was responsible.

[3] The power company, on the other hand, contracted with plaintiff and undertook to carry current from its pole 18 feet from plaintiff's building to the end of plaintiff's wires, and connect with them. For protective devices from its own plant to the connection with plaintiff's cable, the power company was responsible, and if the fire loss arose from its failure to use due care in providing such devices, it was liable. The power company, in discharging this duty, was chargeable with the high degree of care commensurate with the danger from electric current. Columbus R. Co. v. Kitchens, 142 Ga. 677, 82 S. E. 529, L. R. A. 1915C, 570, and note; Turner v. Southern Power Co., 154 N. C. 131, 69 S. E. 767, 32 L. R. A. (N. S.) 848; Pearce v. Mountain States Tel. & Tel. Co., 65 Colo. 91, 173 Pac. 871, L. R. A.

1916F, 1102; Griffith v. New England Tel. & Tel. Co., 72 Vt. 441, 48 Atl. 643, 52 L. R. A. 919; Alabama City, etc., Ry. Co. v. Appleton, 171 Ala. 324, 54 South. 638, Ann. Cas. 1913A, 1181.

As we understand the testimony, the devices relied on in the business as protection against lightning might have been supplied by either party at or near the point of connection of the wires. According to the testimony on behalf of the power company, there is a custom of the trade that producers of electric current do not undertake to provide protection of any kind to their customers against lightning. Plaintiff testified that he knew of no such custom. There was no proof of any obligation assumed by either party to supply devices for the protection of the ginnery at the time the contract of service was made.

The power company at the beginning placed fuse plugs at the point of connection. It is true that its officers testified that these were not meant to protect plaintiff's property, but its own, and that its experts testified they were of little if any value as a protection against lightning. According to the testimony of Cox and other witnesses, however, all the fires occurred after the fuses were taken out and an unbroken copper wire connection made.

[4] The ultimate and vital issue of fact was whether Shores, superintendent of the power company's electrical department, acknowledged or assumed for it the obligation to supply protective devices, and the power company failed to do so. On this issue Cox, the plaintiff, testified that he complained of the danger to his ginnery due to the removal of the fuse plugs, and that Shores promised to put in, as protection against lightning, knife switches and lightning arresters. This was denied by Shores. If the plaintiff, in reliance on such promises of Shores, took no measures for his own protection, the power company would be liable for the loss, if due to the absence of such devices. This issue was fairly stated and submitted to the jury, along with that of negligence imputed to the plaintiff as the sole cause of the fire, plaintiff's alleged contributory negligence, and other issues referred to. In its facts, the case is, from its nature, one of doubt and difficulty, but we find no error of law.

Affirmed.