# EDGAR J. DIDDAMS v. EMPIRE MILKING MACHINE COMPANY, INC.[1]

February 5, 1932.

No. 28,697.

[1]Reported in 240 N. W. 895.

*Sasse, French & Dunnette* and *Hubbell, Taylor, Goodwin, Nixon & Hargrave,* for appellant.

*Wright, Nelson & Plunkett,* for respondent.

HOLT, J.

Defendant appeals from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

Plaintiff sued defendant to recover the value of 12 cows alleged to have been electrocuted because of defendant's negligence in the faulty installation of an electrically operated milking machine in plaintiff's barn. The facts, not really in dispute, may be thus stated:

Defendant manufactures and sells milking machines to local dealers selected by it in this state. Of late those driven by electric current are made and disposed of, besides those run by other power such as gasolene engines. Early in 1927 Joe Lamon was made dealer under a contract with the Rock Island Plow Company, defendant's jobber for Minnesota. In 1928 the relation of defendant

with the Rock Island Plow Company ended, when defendant established a branch office in Minneapolis; but it retained Joe Lamon as its dealer in Mower county under the contract he had signed with the jobber. At least he testified it was not changed, and their dealings were under it. One condition of this contract was that the title to all goods ordered should remain in the company until fully paid for by Lamon. In March, 1929, Joe Lamon received an order from plaintiff's tenant, on plaintiff's going good for the price, for this milking outfit, to be paid for within 30 days after receipt. It arrived and was installed by Lamon, who paid the full price therefor after it was installed but before the expiration of the 30 days from its receipt. Soon thereafter it failed to function properly, and defendant's general sales agent for its branch office adjusted some part and inspected the outfit, pronouncing the installation very good. He was not an electrician. When the barn was entered early April 11, 1930, 12 of the 16 cows were found dead in their stanchions.

A veterinarian and an electrical expert made an examination, and from their testimony the jury could well find that the animals were electrocuted because of careless and faulty installation of the milking machine, in this that the switch turning off and on the electricity operating the motor of the machine was a one-pole switch when it should have been a two-pole switch, as the experts for both parties admitted. That fatal consequences had not appeared sooner was explained by the evidence that one of the insulated wires, connecting the motor, was passed under the narrow space between the motor and the platform on which it stood and then down through a hole in the platform in such fashion that the vibrations of the motor wore off the insulation, permitting a short circuit, which could not have happened if there had been a two-pole switch. Plaintiff's evidence also indicated that due care in installation, where the motor and the electric current were connected with a galvanized iron pipe from the air pump, which pipe was clamped to the iron or steel stanchions, required that the wires carrying the current be grounded, or that at some point the pipe line be in-

sulated so as to prevent the current from passing into the stanchions.

The record shows conclusively that the cows were electrocuted and contains ample evidence justifying the jury in finding that this was due to carelessness and negligence in connecting the machine with the electric power wire without a two-pole switch or by some usual and proper method preventing the electric current from escaping into the stanchions in case of an insulated wire being so negligently run that vibrations or other wear would destroy the insulation so as to let it contact with some conductor and thereby escape and do damage. The jury of course could also find that the dealer, who admittedly installed the milking machine, was careless and negligent, and that such carelessness and negligence were the proximate cause of the death of the animals. The debatable proposition is whether defendant is responsible for Lamon's negligence.

The learned trial court made that issue turn on the ownership or legal title of the milking machine on the day it was installed in and connected with the electric power in plaintiff's barn. This appears to us too narrow or technical a basis upon which to predicate liability. As to the farmer who procures the machine, he should have the same protection against the negligence of the manufacturer whether the dealer has paid for the machine before it is installed or whether he pays for it afterwards. If the manufacturer who disposes of his wares through selected dealers owes any duty with regard to the same as to the consumers or the purchasers from such dealers, it ought to be the same without reference as to when or how the dealer pays the manufacturer for the wares. For defendant it is contended that after a dealer had ordered a milking machine and it had been shipped by defendant the dealer had full right to do with the machine as he saw fit. He could let the farmer install it. The dealer, so far as defendant was concerned, was under no obligation to install it at all. Whether the machine was sold to the dealer for cash or on time or whether it was rented ought not to affect the issue of defendant's responsibility for the

dealer's negligence in his dealings with the one to whom the dealer sells or rents the machine. The dealer had lawful possession, with the right to retain possession as against defendant until default. The error in predicating the right to recover upon the question whether the defendant received the purchase price from the dealer before or after its installation would necessitate a new trial.

But defendant moved for a directed verdict, and error is assigned upon the denial thereof as well as upon denial of the motion for judgment notwithstanding the verdict. With each milking unit sold defendant sent, in the package, printed instructions for its installation, care, and operation. There had to be placed above the stalls a galvanized pipe connecting the air pump with the apparatus of the milk pail so as to create a vacuum to operate the pulsator, the mechanism attached to the milk pail and which does the milking. This pipe defendant did not furnish; neither did it furnish some other parts such as clips and brackets for holding the pipe, the vacuum tank, the motor and pump, unless specially ordered. The dealer usually installed the milking machine; but if the farmer or the dealer's purchaser himself wanted to install it he could do so and a reduction in price be obtained. For four years after a machine was sold by the dealer defendant would render free service if it or any of the units sold failed to work properly. If requested by the dealer defendant would also superintend the first installation of a machine ordered. It may also be taken into consideration that the defendant's managing agent of its Minnesota branch pronounced the installation good, if this may be taken to mean more than that the arrangement of the pipe line with the stalls, the pump, and the milk pail were correct. He was not an electrician.

It is contended that since electrically operated machines involve the use and control of an invisible deadly current the manufacturer owes a duty to the ultimate user of furnishing complete and full direction for installing and connecting such machines with the electric power so that no harm will result to life or property. The claim is that the instructions here furnished were negligently silent concerning safeguards, such as the use of the two-pole switch, the grounding or insulating of the current in the pipe line after it

left the motor. And it may be urged that, since defendant has adopted the method of marketing its machines through dealers who install them, it owes the duty to the users to select dealers who are competent to install them safely or to instruct them so that they can do it properly. There is force in the last proposition, but we conclude that even that, with others urged, fails to fasten responsibility upon defendant for the negligent and unsafe installation here made. There is no claim of any defect in the units furnished by defendants which could have contributed to the death of the cattle nor that any safety devices should have been provided upon any of them. The defect or negligent act pertains to the switch before the current enters the motor furnished by defendant and the grounding or insulation of the pipe line not furnished. In this age of electrically operated machines and contrivances, from the hair clipper, radio, and carpet sweeper to all kinds of machines in shops, factories, and mills, it is requiring too much to make the manufacturer of the machines and instrumentalities, designed to be so operated and who disposes of them only through dealers, to be answerable for the negligence of the dealer, electrician, or other person installing or connecting the same with the wires furnishing the electric or motive power. Plaintiff cites Alton R. & I. Co. v. Foulds, 190 Ill. 367, 60 N. E. 537; Mangan's Admr. v. Louisville E. L. Co. 122 Ky. 476, 91 S. W. 703, 6 L.R.A.(N.S.) 459; Alexander v. Nanticoke L. Co. 209 Pa. 571, 58 A. 1068, 67 L. R. A. 475; Griffith v. New England T. & T. Co. 72 Vt. 441, 48 A. 643, 52 L. R. A. 919. In these cases the one furnishing the electric current and installing it on the premises was sued for negligent installation or maintenance.

Had there here been any evidence showing the relation of master and servant or of principal and agent between defendant and Joe Lamon in the installation and connection of the milking machine with the electric current furnished by the power company upon plaintiff's premises, its responsibility would have followed. We think such relation cannot be spelled out from the written contract under which defendant disposed of its milking machines to Lamon.

When these were shipped to Lamon upon orders sent by him, he, on their arrival, came into full possession and control of the same under obligation to pay defendant a specified price therefor. It was a sale. Sutton v. Baker, 91 Minn. 12, 97 N. W. 420; Russell & Co. v. McSwegan (Sup.) 84 N. Y. S. 614; Smith v. Williams, 90 App. Div. 507, 85 N. Y. S. 506.

As above stated, there was no defect in the machine or the unit defendant manufactured and plaintiff purchased from Joe Lamon which in any way caused or contributed to cause death to the cows. Nor did defendant by its instructions accompanying the packed milking outfit undertake to direct its dealer or plaintiff, the user, how to connect the milking machine or its motor with the electric current or the motive power. It is plain that the installation there-in referred to was to connect the units so as properly to milk the cows in the barn, and did not refer to connection with the power plant. No unit or units furnished by defendant alone or connected up were capable of creating any peril to man or beast. The electric motor did not increase the death-dealing current furnished by the electric power company.

. Of the cases cited by plaintiff the one which might give occasion for some contention that defendant here should be held responsible is Rosebrock v. General Elec. Co. 236 N. Y. 227, 140 N. E. 571. There the manufacturer of a transformer was held liable for having placed in the bottom of the container a false wooden bottom to protect the transformer during shipment. This wooden bottom should have been taken out when the transformer was connected with the high power wires; otherwise it would serve as a conductor when the high voltage current was turned on and ignite the oil with which the container was to be filled. The purchaser did not know of the wooden bottom. It was concealed. The instruction accompanying the shipment did not apprize the purchaser of its presence, and it was not visible. There was an explosion when the high power current was turned on after installation, and 13 men were killed. The court held the responsibility of the manufacturer was a jury question. But that case is readily distinguishable from

the one at bar. There was a hidden defect or danger in the assembling of the machine sold, known to the manufacturer but of which the purchaser was not warned; while here there was no defect in the units furnished by the manufacturer, nor did it undertake to instruct either the dealer or plaintiff, the user, how to connect with the power wires.

The instant case is entirely different from Karsteadt v. Phillip Gross H. & S. Co. 179 Wis. 110, 190 N. W. 844, also cited by plaintiff. There a vendor of an electric washing machine, not provided with gear guards, undertook to instruct the purchaser how to use it and failed to warn against the exposed gears; and the court held that upon such failure responsibility or negligence might be predicated.

We fail to see how defendant can be held responsible for the negligence which in this case caused the loss of plaintiff's cows. The case was closely tried on both sides; and, since there seems to be no probability that plaintiff can establish a right to recover if a new trial were had, we conclude that there should be judgment notwithstanding the verdict.

The order is reversed and the cause remanded with direction to enter judgment for defendant notwithstanding the verdict.